# IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER 1997 SESSION



FILED

February 12, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | C.C.A. No. 02C01-9612-CR-00476 |
| | ) | |
| vs. | ) | Shelby County |
| | ) | |
| KENNETH B. JOHNSON, | ) | Hon. James C. Beasley, Jr., Judge |
| | ) | |
| APPELLANT. | ) | (Sentencing) |
| | ) | |

**FOR THE APPELLANT:**

MARK A. MESLER
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General & Reporter

KENNETH W. RUCKER
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-4351

WILLIAM L. GIBBONS
District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

LEE V. COFFER
Assistant District Attorney General
201 Poplar Avenue
Memphis, TN 38103

**OPINION FILED:** _____

**AFFIRMED**

**CURWOOD WITT, JUDGE**

**OPINION**

The defendant, Kenneth B. Johnson, appeals the manner of the service of his sentence as determined by the Shelby County Criminal Court. He was charged with three counts of forgery over $10,000.00, Class C felonies. Upon acceptance of his guilty plea, the trial court sentenced the defendant to three years on each count, to run concurrently, and imposed a fine of $500.00 on each count. The effective sentence of three years was ordered to be served through periodic confinement consisting of a probationary period of four years in conjunction with incarceration on 52 consecutive weekends during the first year of probation. During the remaining three years of the probationary period, the defendant is to perform 100 hours of community service.

In this appeal, the defendant challenges the trial court's denial of judicial diversion and the denial of probation. Upon a close review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

At the time of sentencing, the defendant was a thirty-year old college graduate. The defendant testified he found a tax form lying in a post office in Hickory Hill. The form reflected the name of a taxpayer, Bernard Johnson, the taxpayer's social security number (SSN), and a copy of the taxpayer's driver's license. The defendant took this form home with him. Later, he used Bernard Johnson's SSN to obtain a new driver's license that bore the defendant's picture and address. He then used the fraudulent SSN and/or identification supplied by the new driver's license to obtain two loans totaling $8,622.73. (These loans were not a subject of the present indictment, nor any other indictment, and the defendant testified the loans were repaid by him and his parents.) In October, 1995, subsequent to obtaining the loans, the defendant wanted to buy a 1995 Ford Mustang from Bud Davis, Inc., a Shelby County car dealership. Discovering that he had inadequate credit to enable him to purchase the car without a prohibitive down

2

payment, he applied for financing, title, and vehicle registration using the false identification and SSN. Before the defendant returned to the dealership to finalize the purchase and loan, the dealer learned about the impending fraud through a credit check and a telephone conversation with the real Bernard Johnson. When the defendant returned to the dealership to execute the various documents, the police arrested him, resulting in the three charges of which he stands convicted.

The defendant testified that when he returned to the dealership, he had actually decided to cancel the purchase. Moreover, he testified, that prior to deciding to cancel the transaction, he had intended to repay the car loan, citing the fact that he gave his true address to the would-be creditor.

The trial court observed that the defendant had no previous criminal history except for traffic offenses, had received a college degree, and had gained experience working as a loan officer in a financial institution. However, the court expressed antipathy toward the defendant's using his social advantages, education and experience in commercial transactions to devise a significant, "white collar" fraud scheme. The court expressly stated that it disbelieved the defendant when he claimed his crimes were spontaneous and impulsive and that he had not used his expertise in devising the scheme from the time when he acquired Bernard Johnson's SSN and driver's license facsimile. The trial court found that incarceration probably would not be a factor in assuring that the defendant would not re-offend, that the defendant probably would follow the conditions of probation, that society's interest is not served by incarceration, and that less restrictive measures than incarceration probably would work. Nevertheless, the count denied judicial diversion and total probation, finding that some incarceration was necessary to avoid depreciating the seriousness of the offense and in order to serve as a suitable deterrent. The court cogently articulated its disagreement with the notion, discerned from the defendant's position, that educated, socially-advantaged defendants with little or no criminal record are viewed as being entitled to probated

3

sentences. The court questioned the law favoring this result, especially when such "white collar" crime is often engendered by greed or avarice, while more needful offenders are often dealt with more severely. The defendant characterizes the court's findings and conclusions as being arbitrary and indicative of the court's refusal to follow the law, namely the Sentencing Reform Act of 1989.

### I. Principles of Sentencing Review.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the "conclusion of the sentencing hearing," determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the

4

defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5)(1990); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. §40-35-102(6) (1997). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. §40-35-102(5) (1997). Thus, a defendant who meets the above criteria is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

In the present case, the trial court tangentially referred to some of the principles of sentencing; however, the defendant is correct in asserting that the trial court evinced a certain antipathy toward the sentencing law, especially insofar as alternative sentencing principles relate to a defendant in Mr. Johnson's situation. Accordingly, we conduct our review without any presumption of correctness of the manner of service of the defendant's sentence.

## II. Judicial Diversion.

In his first issue, the defendant challenges the trial court's denial of judicial diversion. The Sentencing Reform Act of 1989 provides in pertinent part:

5

> If any person who has not previously been convicted of a felony or a Class A misdemeanor is found guilty or pleads guilty to a misdemeanor which is punishable by imprisonment or a Class C, D or E felony, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place the person on probation upon such reasonable conditions as it may require and for a period of time not less than the period of the maximum sentence for the misdemeanor with which he is charged, or not more than the period of maximum sentence of the felony with which he is charged, on condition that the defendant pay, in addition to the payment of not less than ten dollars ($10.00) nor more than thirty-five dollars ($35.00) per month, as determined by the court [as part payment of the expenses of supervision of the defendant] . . .

Tenn. Code Ann. § 40-35-313(a)(1) (1997). The procedure under this provision is commonly referred to as judicial diversion. It is substantially similar to pretrial diversion; however, judicial diversion follows a guilt determination and the decision to grant diversion rests with the court, not the prosecutor. State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

The lower court's denial of judicial diversion is subject to appellate reversal only if that court abused its discretion. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983). When a defendant challenges the denial of judicial diversion, we are constrained not to revisit the issue if the record contains any substantial evidence supporting the trial court's decision. Hammersley, 650 S.W.2d at 356; accord State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993) (where the evidence is capable of justifying differing results in a pretrial diversion case, this court allows the prosecutor his or her discretion on a decision of whether to allow diversion).

In determining whether to grant judicial diversion, the trial court must consider

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether diversion will serve the public's and the accused's interests in the ends of justice.

State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted).

6

Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. Id., 871 S.W.2d at 168 (citations omitted). The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. Id., 871 S.W.2d at 168.

The trial court did not explain whether it had considered all of the other factors, and under the dictate of Bonestel, the trial court's analysis does not adequately appear of record. The question remains, however, whether the trial court reached the correct result notwithstanding its failure to explain its analysis on the record. See State v. Talmadge G. Wilbanks, No. 02C01-9601-CR-00003 (Tenn. Crim. App., Jackson, Nov. 19, 1996) (trial court's denial of diversion affirmed despite court's failure to explain its considerations and analysis on the record).

We cannot conclude that the court abused its discretion in denying judicial diversion. The trial court determined the defendant was untruthful, or at least lacked candor, in that he maintained his actions were spontaneous or impulsive. The defendant's characterization of his actions is belied by his successful scheme to obtain a bogus driver's license. We believe this lack of candor with the trial court weighs against his amenability to correction. See State v. Paul Emile Oliver, No. 03C01-9510-CC-00332 (Tenn. Crim. App., Knoxville, July 15, 1996) (denial of pretrial diversion upheld based upon appellant's inconsistent statements to the trial court about his involvement in drug sales prior to apprehension); State v. Nease, 713 S.W.2d 90 (Tenn. Crim. App. 1986) (defendant who was untruthful with trial court appropriately denied diversion).

This court has said that the presence of only one of the factors is sufficient to support a denial of judicial diversion. State v. Thomas Dailey, No. 02C01-CR-00008 (Tenn. Crim. App., Jackson, Aug. 21, 1991) (relying on State v. Baron, 659 S.W.2d 811 (Tenn. Crim. App. 1983) (applying this rule in the context

7

of a denial of probation)).  The trial court had the opportunity to hear and see the defendant testify, and we must defer to the trial court's conclusion that the defendant lacked candor.  Therefore, the Bonestel "amenability to correction" factor adequately supports the denial of judicial diversion.

### III.  Alternative Sentencing - Probation.

Having qualified pursuant to Tennessee Code Annotated section 40-35-102(6) (1997), the defendant is presumed to be a favorable candidate for alternative sentencing.  Moreover, he is eligible for probation.  See Tenn. Code Ann. § 40-35-303(a) (1997).  He argues he should receive straight probation, rather than periodic confinement.

First, we point out that the defendant did receive an alternative sentence.  Split or periodic confinement is an alternative sentencing option. See State v. James A. Howard, No. 03C01-9608-CC-00284, slip op. at 7 (Tenn. Crim. App., Knoxville, February 24, 1997), appl. perm. app. dismissed (Tenn. 1997); State v. James E. Allred, No. 03C01-9504-CR-00110, slip op. at 2 (Tenn. Crim. App., Knoxville, March 20, 1996); State v. Marjorie Jeanette Sneed, No. 03C01-9410-CR-00369, slip op. at 3 (Tenn. Crim. App., Knoxville, October 17, 1995); State v. Danny Allison, No. 03C01-9403-CR-00106, slip op. at 3 (Tenn. Crim. App., Knoxville, March 23, 1995); State v. Alvin Lee Lewis, No. 01C01-9404-CC-00125, slip op. at 7-8 (Tenn. Crim. App., Nashville, March 14, 1995), perm. app. denied (Tenn. 1995); see Tenn. Code Ann. § 40-35-104(c) (1997).  The benefit the defendant enjoyed in being presumed a suitable candidate for alternative sentencing has been depleted.

Accordingly, we move to the question of probation.  The defendant seeks total probation. Probation is, indeed, an alternative sentencing option. Tenn. Code Ann. § 40-35-104(c)(3) (1997); Tenn. Code Ann. § 40-35-303(b) (1997). However, the burden rests with the defendant to show that he is entitled to

8

probation. Tenn. Code Ann. § 40-35-303(b) (1997); see State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995). In Bingham, this court observed:

> It should be pointed out that determining whether a defendant is entitled to an alternative sentence necessarily requires a separate inquiry from that of determining whether the defendant is entitled to full probation. This is so because the inquiries involve different burdens of proof. Where a defendant is entitled to the statutory presumption of alternative sentencing, the state has the burden of overcoming the presumption with evidence to the contrary. Conversely, the defendant has the burden of establishing suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing.

Bingham, 910 S.W.2d at 455. To prevail in the quest for full probation, a defendant must demonstrate that probation "will 'subserve the ends of justice and the best interest of both the public and the defendant.'" Id., 910 S.W.2d at 456 (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). In Bingham, we cited the following factors which, although "not controlling the discretion of the sentencing court," should be considered in determining the appropriateness of probation:

> (1) The nature and characteristics of the crime, under Tenn. Code Ann. § 40-35-210(b)(4) (1990);
> (2) the defendant's potential for rehabilitation under Tenn. Code Ann. § 40-35-103(5) (1990);
> (3) whether full probation would "unduly depreciate the seriousness of the offense," under Tenn. Code Ann. § 40-35-103(1)(B) (1990); and
> (4) whether a sentence of full probation would "provide an effective deterrent," under Tenn. Code Ann. § 40-35-103(1)(B) (1990).

Bingham, 901 S.W.2d at 456.

The defendant correctly asserts that the court's reliance upon deterrence is unsupported in the record. See State v. Davis, 940 S.W.2d 558, 560 (Tenn. 1997); State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991).[1]

---

[1] We are aware that a document appears in the technical record which bears the caption "presentence report," and this document contains a victim impact statement. This statement includes declarations of an officer of the corporate victim which reveal that this victim suffered other thefts which resulted in a large aggregate loss. We do not even determine if such information serves as evidence of a need for deterrence because the presentence report which contains the statement is not in evidence. Other aspects of the presentence report are in evidence through the testimony of the defendant, but the report itself was not exhibited to the sentencing hearing by the trial judge. Its appearance in the technical record certified by the trial court clerk is meaningless from an evidentiary standpoint. State v. Cooper, 736 S.W.2d 124, 131 (Tenn. Crim. App. 1987); see Tenn. R. App. P. 13(c); see also State v. Jerry Blaylock,

The court's ruling cannot be justified by any need for deterrence. <u>Hartley</u>, 818 S.W.2d at 375.

Consequently, the only remaining bases relied upon by the court for supporting its decision are the need to avoid depreciating the seriousness of the offense, <u>see</u> Tenn. Code Ann. § 40-35-103(1)(B) (1997), and the perceived lack of candor. We need not discuss the claim that the trial court improperly determined that confinement was necessary to avoid depreciating the seriousness of the offense, however, because, as discussed in the preceding section of this opinion, the trial court perceived a lack of candor, if not mendacity, in the defendant's explanation of his offense.

A lack of candor, bearing upon the defendant's amenability to probation, is a recognized basis for denying probation. <u>State v. Neely</u>, 678 S.W.2d 48, 49 (Tenn. 1984); <u>State v. Byrd</u>, 861 S.W.2d 377, 380 (Tenn. Crim. App. 1993); <u>State v. Poe</u>, 614 S.W.2d 403 (Tenn. Crim. App. 1981). Accordingly, we cannot conclude that the trial court abused its discretion in ordering periodic confinement.

The judgment of the trial court is affirmed.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
JOE B. JONES, PRESIDING JUDGE

_____
JERRY L. SMITH, JUDGE

_____

No. 02C01-9602-CC-00069, slip op. at 15, n. 2 (Tenn. Crim. App., Jackson, Aug. 21, 1997), <u>pet. for perm. app. filed</u> (Tenn. Oct. 20, 1997).