# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 16, 2000 Session

## STATE OF TENNESSEE v. JERRY W. YANCEY, JR.

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-499-120     Timothy L. Easter, Judge**

---

**No. M1999-02131-CCA-R3-CD - Filed December 14, 2000**

---

The appellant/defendant, Jerry W. Yancey, Jr., was convicted by the Williamson County Jury on four counts, two counts of aggravated assault and two counts of felony reckless endangerment. In count five, the defendant was found not guilty of felony reckless endangerment. Upon the defendant's conviction for aggravated assault, the trial court imposed sentences of three and one-half (3-½) years in the Department of Correction. However, the trial court placed the defendant on probation for four (4) years with certain special conditions, mainly that the defendant serve sixty (60) days, day for day, in the Williamson County Jail. In his appeal, the defendant challenges: (1) Whether the trial court erred in finding that the District Attorney General did not abuse his discretion in denying the defendant pre-trial diversion?; and (2) Whether the trial court erred in denying the defendant full probation? Upon our review of the entire record, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

John S. Colley, III, Columbia, Tennessee, for the appellant, Jerry W. Yancey, Jr.

Paul G. Summers, Attorney General & Reporter, Jennifer L. Bledsoe, Assistant Attorney General, Sharon Tyler, Assistant District Attorney, and Robert S. Hassell, Assistant District Attorney, for the appellee, State of Tennessee.

# OPINION

## BACKGROUND

In view of the defendant's appellate issues, it is necessary to set forth the facts leading to the defendant's convictions.

At trial, it is undisputed that the defendant, on January 29, 1999, at approximately 6:30 a.m., while driving northbound on I-65 in Williamson County, fired a pistol across the rear of an automobile while it was traveling northbound in the left-hand lane of traffic.

At trial, Ms. Sandra Martin, a licensed practical nurse, testified that she was a passenger in a Grand Prix proceeding northbound on I-65 in Williamson County on January 29, 1999, at approximately 6:00 a.m. The vehicle belonged to Ms. Martin, but was driven by her roommate, Teresa Lovett. While northbound in the left-hand lane, a pickup truck (Jeep) pulled up behind Ms. Lovett, on their bumper. The pickup stayed on their bumper, so Ms. Lovett slowed down and tapped her brakes in an attempt to make the pickup back off. The pickup pulled into the right lane and was alongside of the Grand Prix when Ms. Martin looked at the defendant who was driving the pickup. She stated that the pickup got behind them again and flashed its bright lights, while they were traveling about 65 mph. The defendant got back into the right lane and pulled along beside the Grand Prix again. Ms. Martin saw that the truck's interior light was on and that the defendant had a gun in his right hand. Ms. Martin ducked and she heard a "pow." Ms. Martin then used her cell phone and called 911, stating, "we have been shot at on I-65 North." Ms. Martin testified that they got off the interstate at the Franklin/Murfreesboro exit and talked to the sheriff's department. During cross-examination, Ms. Martin admitted that Ms. Lovett had made a gesture ("a bird"), towards the defendant's truck.

Ms. Teresa Lovett, a certified nursing technician, testified that she was driving northbound on I-65 in a Grand Prix on January 29, 1999. She and Ms. Martin were on their way to work, and it was misty and rainy. Ms. Lovett estimated that her speed was at 70 mph in the left lane. She stated that there was traffic in front of her and to her right. A jeep pulled up behind her and got real close to her bumper. Ms. Lovett slowed down and tapped her brakes so that the jeep would back off. She stated that the jeep pulled into the right lane and while adjacent to her, the driver flipped a "bird" at her, so she gave him one back. Ms. Lovett could see a woman in the front passenger seat of the jeep. Due to the defendant's extreme closeness, Ms. Lovett became very scared because she was four months pregnant. As Ms. Lovett sped up, the defendant pulled into the right lane, and Ms. Martin looked over at the defendant and shouted, "he's got a gun." Ms. Lovett looked at the defendant and saw a gun pointed at them. She stated that Ms. Martin ducked, so she sped up, thinking that he would kill both of them, and then the defendant fired the gun. She could not say what the bullet hit, if anything. They got off the interstate and called the sheriff's department.

David Beard, a detective with the Williamson County Sheriff's Department, testified that he was assigned to the case of the shooting on I-65 involving the victims and the defendant. Detective

Beard searched the defendant's jeep and found three hand guns, a .9mm Rutger semi-automatic, a 380 semi-automatic and a Colt 45 automatic pistol. The Colt 45 was used in the shooting on I-65. On January 29, 1999, Detective Beard obtained statements from the defendant, the defendant's wife, the defendant's brother and the defendant's employee, all of whom were in the jeep at the time of the shooting. Detective Beard identified a tape recording and transcription of the defendant's statement which were played for the jury. In his statement, the defendant related:

> He was going northbound in the left lane on I-65 at about 70 mph in his 1993 Jeep. His wife was in the front seat and his brother, Michael Yancey was in the rear with an employee, Will. A car in front of him was going slow and a car to his right was going slow. The defendant estimated that the cars were going about 58 to 64 mph. The defendant backed off and blinked his lights so the car in front would pull over. Instead the driver of the car slammed on his brakes hard and the defendant slammed his brakes. The defendant pulled into the right lane and while parallel with the car, the driver flipped the defendant. The defendant got a camera from the console and attempted to take some pictures of the car, so he could show the police about this car driving so slow. The defendant believed it was a man driving the car, but could see a female on the passenger side. The defendant stated that he got his Colt 1911 45 auto, rolled the window down and jacked a shell into the chamber. Also, he knew that there were no homes on the other side of the interstate. While even with the trunk of the car, the defendant fired one shot across the trunk of the car, and across the interstate toward the mountain. The defendant stated that he did it to scare the driver, but he had no intent to strike the car. Evidently, the driver heard the shot as he pulled off the interstate at the Franklin/Murfreesboro exit. The defendant concluded the statement by saying he was very sorry, he had a baby coming.

### SENTENCING HEARING

On November 24, 1999, the trial court conducted a sentencing hearing and a request for full probation. The pre-sentence report was introduced as an exhibit and the defendant agreed to its contents. Also, a letter from the defendant's supervisor in Illinois was admitted as an exhibit.

Ms. Teresa Lovett testified that she is presently employed at the Cumberland Nursing Home in Nashville, Tennessee. She has a six-month old son and at the time of the incident, she was four (4) months pregnant. Ms. Lovett was upset that the defendant, even in court, had never apologized for his actions, and she felt that he certainly needed to do so. She stated that she is paranoid about driving on I-65 and has moved from Maury County because the defendant still lives in that county. Ms. Lovett stated that she believes the defendant should do some jail time for the stupid thing he did on I-65.

Ms. Sandra Martin testified that since the incident she is very scared about driving on the interstate and is paranoid. She never thought that anything like that would happen on a highway.

Like Ms. Lovett, Ms. Martin believes the defendant should do some jail time and should apologize for what he has done. Ms. Martin believes that the defendant's temper got the best of him.

On behalf of the defendant, Ed R. Hurt, a mental health therapist, testified that he first saw the defendant in March, 1999. The defendant was stressed over the incident, suffered headaches, loss of appetite, loss of sleep, and suffered from intense anxiety. Mr. Hurt saw the defendant on five occasions, in which he taught the defendant certain techniques in anger management to help him deal with stress and handle confrontational situations. Mr. Hurt was aware that the defendant was a hunter and owned guns and believes that the defendant should not own any guns in the future due to his anger potentiality.

Mrs. Melinda Yancey, wife of the defendant, testified that they have an eight month old child, who underwent surgery at the age of five months. She works for her husband who is in the cabinet installation business, and takes care of their son. The child has special medical needs that requires her full-time attention. She stated that they are presently working in the Midwest for three weeks at a time. Their home in Columbia, Tennessee is presently 85 percent complete and if her husband goes to jail, she could not meet the house payments or their apartment rent. She acknowledged that there were three guns in the vehicle, one of which belonged to her. They kept the guns because of the large amount of money they carried to pay their employees. Mrs. Yancey agreed that the victims did not deserve to be fired at. She was not aware that her husband pulled the gun because she did not see it. She told her husband, "just pass them, they are endangering our lives."

Jerry Yancey, age 34, testified that he is a sub-contractor for Millpride in Illinois installing cabinets. He has about four employees. He stated that he told his supervisor about the incident and is still working for the company. Mr. Yancey corroborated his wife's testimony about their home and financial condition. He stated that after the incident, he was seen by Mr. Hurt. The defendant admitted having problems with controlling his anger because of his stressful job, his home completion, and the pending birth of their first child. The defendant apologized to the victims for his actions, describing them as wrong and stupid, "it was just stress." During cross-examination, the defendant admitted that he did not want to go to jail. However, if he had been the victims, as well as his family, he thought that the individual should do some jail time. The defendant believes he should not do any jail time since he has served some time after his arrest.

In its sentencing ruling, the trial court found one enhancement factor, (1) the defendant had a previous record of criminal conviction or behavior in addition to what is required to establish the appropriate range, applicable. *See* Tenn. Code Ann. § 40-35-114(1)(1997). The trial court rejected the State's request to consider enhancement factors (4), (10), and (16). In mitigation, the trial court found that factor (10) was applicable in that the defendant cooperated with the police in the investigation of the offense. However, the trial court rejected mitigating factors (2), (3), and (11). *See* Tenn. Code Ann. § 40-35-113 (1997). The trial court found that a four (4) year sentence was appropriate for the offenses of aggravated assault and considering one mitigation factor, the trial court reduced the sentences to three and one-half (3-½) years. The trial court denied the defendant's request for full probation, placing the defendant on probation for four (4) years, with certain special

conditions: (1) the defendant would maintain employment; (2) he would continue anger management treatment; (3) he would obtain a GED; (4) he would possess no weapons; (5) he would have no contact with the victims; and (6) he would serve sixty (60) days, day for day, in the Williamson County Jail. The trial court ordered that the sentences be served concurrently.

## LEGAL ANALYSIS

### PRE-TRIAL DIVERSION

The defendant asserts that the trial court erred in finding that the District Attorney General did not abuse his discretion in denying the defendant's request for pre-trial diversion. The State contends that: (1) the defendant has waived this issue for failure to raise this matter in a motion for a new trial, as required in Tenn. R. App. P. 3(e); and (2) the trial record supports the trial court's decision in finding that the District Attorney General did not abuse his discretion in denying pre-trial diversion.

Whether the denial of a District Attorney General's pre-trial diversion, prior to and after a trial on the merits, should be raised in a motion for a new trial is of first impression in this state. We hold that the defendant is not required to present this issue in a motion for a new trial after a conviction. Further, the defendant complained that the trial court erred in not finding that the District Attorney General abused his discretion in denying pre-trial diversion. We believe it is necessary to set forth the factual history of this issue.

The record established that the defendant, on June 4, 1999, filed a petition for certiorari with the trial court requesting that the trial court review the District Attorney General's denial of his application for pre-trial diversion. In support of the petition, the defendant filed a copy of his application for pre-trial diversion and a copy of the District Attorney General's denial. In his denial, the District Attorney General set forth five grounds for denial of pre-trial diversion:

(1)     The circumstances of this offense does not favor pre-trial diversion. The defendant, while traveling northbound on I-65, placed Ms. Lovett, Ms. Martin, and north and southbound traffic in grave danger. A weapon being fired out of a vehicle that is being driven on the interstate is a recipe for horror and danger. The defendant's initial statement made no mention of discharging a weapon, but he just took a couple of pictures with a camera. This fact coupled with the fact that the defendant had the presence of mind to have his brother throw the shell casing out the window shows the defendant immediately knew that what he had done was wrong and took steps to cover it up. The defendant did not stop until pulled over by the police. These facts show that the defendant sustained his intent to violate the law up to the point where Detective Beard confronted him with the true facts from the defendant's brother.

(2)     Defendant's Social History. The defendant is married to his second wife and has a 15 year old daughter that lives with his parents. The defendant is self-employed in

an apparently successful construction business, without a high school diploma or GED. The defendant does not explain why his 15 year old child lives with his parents.

As to the defendant's mental health, the defendant does not mention how long he has been attending Cumberland Associates or what progress, if any, has been made. Either the sessions were and are a monumental failure as evidenced by this incident or he began after the incident. This leaves this Assistant District Attorney General without necessary information to make an informed decision. The defendant's failure to explain why his daughter lives with his parents and the specifics about his stress control indicate the defendant does not wish to discuss the same.

As to question #29, the defendant listed five references who has known him for 10 years, and were aware of the facts of this case. Three of the persons who were contacted had not discussed the facts with the defendant, but spoke very favorably of the defendant. This lack of discussion with these references indicates that the defendant does not want to take responsibility for his actions and failed to follow instructions on his application. Additional evidence that the defendant refuses to accept responsibility for his actions is that in question #46 the defendant refused to give a recitation of the facts and instead refers to his statement given to Detective Beard. For these reasons, the defendant's social history is considered neutral.

(3)     Criminal History. The defendant indicated that he was convicted of reckless driving in 1996. However, the defendant was arrested for DUI. The fact that the defendant chose not to say that he was arrested for DUI and it was reduced weighs against him. The offense is very recent and shows that the defendant has been the beneficiary of leniency in the recent past from our court system. This factor is neutral at best.

(4)     Defendant's Physical and Mental Condition. The defendant's application states his mental and physical condition is normal and that the defendant has never been evaluated for psychological abnormalities. However, the defendant has attended stress sessions. This factor played no significant part to deny the defendant's request for pre-trial diversion.

(5)     Whether a Pre-Trial Diversion Agreement Would Meet the Ends of Justice. Pre-trial diversion would not be proper in this case, the defendant has not expounded on some very important areas of this application. The defendant has been arrested for DUI resulting in a conviction for reckless driving in 1996. The defendant has already received leniency in our criminal justice system. The defendant initially attempted to conceal the truth about this incident and enlisted his wife to go along with the story. It was not until Detective Beard confronted the defendant with the truth that he told what really happened. This evidence sustains an intent to violate the law. His actions endangered everyone on the interstate.

The defendant does not state in his application his involvement in the case. Instead, he refers to the statement he gave Detective Beard. This indicates he has refused to accept full responsibility for his actions, and, thus a poor candidate for pre-trial diversion. Additionally, deterrence may be considered when determining whether pre-trial diversion will serve the ends of justice. Clearly, this is a situation where the nature and gravity of the circumstances and the great interest of the public demand that this type of activity be deterred. The ends of justice demands this application be denied.

On July 26, 1999, the trial court conducted a hearing to resolve any factual dispute between the defendant and the State concerning the denial of the application. In essence, the defendant contends that he was available to answer any questions by the District Attorney General as to the merits of this application. However, the District Attorney General did not respond. Further, the defendant asserts that the District Attorney General's response is inadequate and not a basis for a denial of pre-trial diversion. The State disagrees citing *State v. Carr,* 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993).

The trial court held:

"I do not find evidence that the State has grossly or patently abused its discretion in this case given the nature of this case and the facts or at least the facts that have been reported and supported by your client's statement, too, Mr. Colley. This does seem to be a case where the circumstances of the crime and the need for deterrence outweigh any other relative factors that would justify pretrial diversion. And I find therefore that the State has not abused its discretion in this case and deny the motion for certiorari in the case…"

First, we address the State's position that this issue is waived for failure to raise the same in a motion for a new trial. Tenn. R. App. P. 3(e) in pertinent part states:

Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Further, Tenn. R. Crim. P. 38, Appeal of Denial of Pre-Trial Diversion, provides:

A defendant who seeks and is denied pre-trial diversion pursuant to T.C.A. § 40-15-105 shall have the right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion. If the trial court finds that the prosecuting attorney

has not committed an abuse of discretion in failing to grant pre-trial diversion, the defendant may pursue an interlocutory appeal pursuant to either Rule 9 or Rule 10 of the Tennessee Rules of Appellate Procedure. In the event that the defendant does not pursue an interlocutory appeal, the defendant shall have the right to appeal the decision of the trial court denying the petition for writ of certiorari pursuant to Tennessee Rule of Appellate Procedure 3(b) following the entry of the final judgment in the trial court. (1997).

*See State v. Vanderford,* 980 S.W.2d 390 (Tenn. Crim. App. 1997).

The record established that the defendant, upon the denial by the trial court, filed an interlocutory appeal with this Court. On October 19, 1999, this Court denied the petitioner's application for extraordinary appeal, Tenn. R. App. P. 10, holding:

"should the petitioner be convicted, he may raise the issue on direct appeal pursuant to T.R.A.P. 3(b)."

We disagree with the State that a denial of pre-trial diversion by the District Attorney General, at the conclusion of a trial, necessitates this denial be raised in a motion for a new trial. We are convinced, from the clear language in Tenn. R. Crim. P. 38 and Tenn. R. App. P. 3(b), that a defendant may raise a denial of pre-trial diversion without alleging the same issue in a motion for a new trial. We fail to see how a denial of pre-trial diversion by a District Attorney General affects trial action or conduct resulting in trial errors as contemplated by Tenn. R. App. P. 3(b).

As to the trial court's finding the District Attorney General did not abuse its discretion in denying pre-trial diversion, the defendant asserts that the trial court failed to address the total reasons offered by the State in denying diversion.

One who is statutorily eligible is not presumptively entitled to diversion. The decision whether to grant pre-trial diversion rests within the sound discretion of the District Attorney General. Tenn. Code Ann. § 40-15-105(b)(3) (Supp. 1999); *State v. Pinkham,* 955 S.W.2d 956 (Tenn. 1997); *State v. Hammersley,* 650 S.W.2d 353, 355 (Tenn. 1983). However, it is the obligation of the defendant to "provide the prosecuting attorney with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought." *State v. Herron,* 767 S.W.2d 151, 156 (Tenn. 1989). Likewise, the defendant must "provide a prosecutor with as complete an application as circumstances may warrant." *State v. Winsett,* 882 S.W.2d 806, 810 (Tenn. 1993). While the defendant has the obligation to demonstrate his eligibility and suitability for pre-trial diversion, the prosecutor has specific duties and responsibilities, especially when the District Attorney General is denying the application. In *State v. Curry,* 988 S.W.2d 153, 157 (Tenn. 1999), the Supreme Court set forth the considerations to be applied by the District Attorney General in determining suitability for pre-trial diversion:

When deciding whether to enter into a memorandum of understanding under the pre-trial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pre-trial diversion will serve the ends of justice and the best interest of both the public and the defendant.

Citing *State v. Patterson,* 955 S.W.2d at 959-60.

Once the District Attorney General denies pre-trial diversion, the burden shifts to the defendant of proving that the District Attorney General abused its discretion. *State v. Winsett,* 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993). "The record must show an absence of any substantial evidence to support the refusal of the District Attorney General to grant pre-trial diversion. *See State v. Houston,* 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995). Upon a writ of certiorari, the trial court must limit its consideration to the evidence which was before the prosecutors and to the reasons given by the prosecutor in denying diversion. *State v. Winsett,* 882 S.W.2d at 809. The trial court must also adhere to the same balancing procedure (as is imposed upon a prosecutor), which must be followed on a case-by-case basis. *State v. Herron,* 767 S.W.2d at 156. The trial court must state its findings in writing. *Id.* A denial by the trial court is reviewed by this Court as to whether the trial court's determination is supported by a preponderance of the evidence. *State v. Curry,* 988 S.W.2d at 158.

In reviewing the District Attorney General's rejection of the defendant's application, the District Attorney General did not mention or refer to the defendant's prospect for amenability for correction, nor did the trial court in its oral ruling. However, the District Attorney General did refer to the other factors in considering an application for pre-trial diversion. *See State v. Curry,* 988 S.W.2d at 157. The focus on amenability to correction is not an exclusive one, though. *State v. Carr,* 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993). In appropriate case, the instances of the crime and the need for deterrence may outweigh relevant factors and justify a denial of pre-trial diversion. *Id.* "The circumstances of the offense and the need for deterrence may alone justify a denial of diversion, *but only if all of the relevant factors have been considered as well.*" *State v. Curry,* 988 S.W.2d at 158. (Emphasis in original). *See State v. James M. Lane, Jr.,* No. E1999-00615-CCA-R9-CD, 2000 WL 709152, at *3 (Tenn. Crim. App. June 1, 2000). Since the District Attorney General and the trial court found the seriousness of the offense and deterrence as a valid basis for denial of pre-trial diversion, we must review the record to determine if their conclusions are correct.

Ordinarily, the review of these facts and conclusions of law may be determined in an interlocutory appeal, but in this case the defendant proceeded to trial on the merits of the two offenses of aggravated assault and reckless endangerment of the public at large. The record reveals that the defendant entered pleas of guilty to reckless endangerment, in counts three and four, which

the trial court merged with the aggravated assault verdicts. We, as well as the trial court, have the benefit of trial testimony to determine the seriousness of the offenses and its affect on the jury. Would the facts adduced at trial assist this Court in determining whether the trial court was correct in upholding the denial of pre-trial diversion?

We find this case analogous to a similar question in *State v. Henning,* 975 S.W.2d 290 (Tenn. 1998). In *Henning,* the trial court commented at the suppression hearing that the only substantial issue raised by the motion to suppress was the sufficiency of the search warrant affidavit. Because the sufficiency of a search warrant affidavit is to be determined from the allegations contained in the affidavit alone, the State offered no proof at the suppression hearing. The defendant testified that officer Caldwell did not "knock and announce," but simply "barged" into his home. At trial, the State offered testimony of Officer Caldwell who related the circumstances of the defendant's arrest and the execution of the search warrant. The defendant contends that the Court of Criminal Appeals erred by considering the proof offered by the State at trial when evaluating the correctness of the trial court's ruling on the motion to suppress. According to the defendant, when evaluating a trial court's denial of a pre-trial motion to suppress, an appellate court must only consider the evidence that was before the trial court at the hearing on the motion. The State argues that an appellate court may and should consider the entire record, including evidence at trial.

The Supreme Court held:

> The Tennessee Rules of Appellate Procedure are to "be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits." Rule 1, Tenn. R. App. P. To that end, the appellate courts of this State are authorized to "grant relief on the law and facts to which the party is entitled or the proceeding otherwise requires...." Rule 36(a), Tenn. R. App. P. In our view, these rules contemplate that allegations of error should be evaluated in light of the entire record. Accordingly, we hold that in evaluating the correctness of a trial court's ruling on a pre-trial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial.
>
> Our holding with regard to the evidence which may be considered by an appellate court does not modify the applicable standard of review, which we recently clarified in *State v. Odom,* 928 S.W.2d 18, 23 (Tenn. 1996). We reiterate that an appellate court should uphold a trial court's decision on a motion to suppress, unless the evidence in the record preponderates against the finding. "Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. *Id.* The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence, as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Id.* Upon consideration of the entire record in this case, we conclude for the reasons that follow, that the evidence does not preponderate against the trial court's denial of the defendant's motion to suppress.

*State v. Henning,* 975 S.W.2d at 299.

We hold that in evaluating the correctness of a trial court's finding in a writ of certiorari, in which the District Attorney General has denied pre-trial diversion, appellate courts may consider the proof adduced at both the hearing on the writ of certiorari and at trial. Upon consideration of the entire record, we conclude that the evidence does not preponderate against the trial court's denial of the defendant's writ of certiorari. We agree with the trial court that the facts in this case would support a denial of pre-trial diversion. The defendant, while proceeding northbound on an interstate, becomes frustrated with the actions of the victim driving slow in the left lane. The testimony at trial would establish that the speed of both vehicles was 65 to 70 mph. The defendant attempts to take photographs of the car he claims deliberately blocks his attempt to pass. Mutual gestures are exchanged between the drivers. There are indications in the proof that the defendant had the opportunity to pass this vehicle and avoid the incident. However, the defendant obtained his Colt .45 automatic, "jacked a shell," and fired across the trunk of the victim's car to scare the occupants. The bullet proceeded across the southbound lanes and into a wooded section of I-65. Both women in the victim's car became very frightened, pulled off the interstate, and called 911. The proof reveals that the driver of the victim's car was four months pregnant and that the defendant's wife was eight months pregnant.

Although not adduced at trial, the record established that the defendant had his brother, Michael Yancey, throw the ejected shell casing out the jeep's window. This gave some credence to the State's concern that the defendant was avoiding responsibility for this offense.

We agree with the trial court, as well as the District Attorney General, that the facts in this case are very serious. The operation of vehicles at high speeds, the firing of a pistol in extreme anger or frustration, the potential for the loss of human life, and some avoidance of responsibility by the defendant until confronted with the true facts indicate that this incident was a classic example of "road rage." The record supports the trial court's finding that the District Attorney General did not abuse its discretion in denying pre-trial diversion. There is no merit to this issue.

## FULL PROBATION

The defendant asserts that the trial court erred in denying him full probation solely upon the circumstances of the offense. The imposition of a sixty (60) day period of confinement is not warranted. The State contends that the record supports the sentence imposed.

A defendant is eligible for probation if the sentence to be imposed is eight (8) years or less and the trial court is required to consider probation as an alternative. Tenn. Code Ann. § 40-35-303(a)-(b) (1997). However, even if the probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." *State v. Hartely,* 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden, on appeal, of showing that the sentence imposed is improper and that full probation will be in both the best interest of the defendant and the public. *State v. Bingham,* 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). When

considering a defendant's suitability for probation, the trial court considers the following factors: (1) the nature and circumstances of the criminal conduct involved; (2) the defendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation, the defendant will commit another crime; (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense; and (4) whether a sentence other than full probation would provide an effective deterrence to others likely to commit similar offenses. Tenn. Code Ann. § 40-35-210(b)(4), 40-35-103(5), 40-35-103(1)(B) (1997 & Supp. 1998); *State v. Baker,* 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); *State v. Bingham,* 910 S.W.2d at 456.

In the present case, the trial court noted that the defendant was a self-employed individual, married with an eight-month old son who has special needs, and another child, age 16. The trial court acknowledged that the defendant had taken personal responsibility for his actions, that he was sorry, apologetic, remorseful, and did recognize the stupidity of his conduct. Also, the trial court noted that the defendant passed a drug test the morning of the hearing and was amenable to rehabilitation. The trial court noted that if the defendant would be confined for a lengthy period of time, his wife and son would endure financial hardships. However, the trial court stated that it was shocked by the defendant's conduct and that it could not totally ignore the danger of the defendant's conduct, and that some confinement was necessary to avoid depreciating the seriousness of the offense. The trial court believed it was necessary to send a message to society that a person could not act in such a manner. The trial court imposed a sentence of three and one-half (3-½) years, with four (4) years probation, but required the defendant to serve sixty (60) days of continuous confinement in the Williamson County Jail.

In order to deny an alternative sentence, which includes full probation, based on the seriousness of the offense, under Tenn. Code Ann. § 40-35-103(1)(B), "the circumstances of the offense, as committed, [must be] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense outweighs all factors favoring a sentence other than confinement." *State v. Bingham,* 910 S.W.2d at 455. Although, the circumstances of the offense may not be sufficient in themselves to deny an alternative sentence, the facts may still be sufficient to deny full probation. *Id.*

We conclude that the facts in the present case are sufficient for the trial court to deny full probation and that the defendant has not met his burden of establishing suitability for full probation. There is no merit to this issue.

The trial court's judgment is affirmed.

_____
L. TERRY LAFFERTY, SENIOR JUDGE