**STATE of Tennessee, Appellant,**

v.

**Charles M. CARR, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

March 31, 1993.

Charles W. Burson, Atty. Gen. of Tennessee and Amy L. Tarkington, Asst. Atty. Gen. of Tennessee, Nashville, Paul F. Goodman, Dist. Atty. Gen. pro tem, Memphis, for appellant.

Richard Gossum, Trenton, for appellee.

## OPINION

TIPTON, Judge.

The state appeals by permission from the order of the Gibson County Circuit Court granting the defendant, Charles M. Carr[1], pretrial diversion. The State contends that the trial court failed to apply the appropriate standard of review of the prosecutor's refusal to allow diversion. The defendant responds that the trial court acted correctly because the prosecutor abused his discretion when he failed to focus upon the defendant's amenability to correction as provided by *State v. Hammersley*, 650 S.W.2d 352 (Tenn.1983). This case highlights the limits placed upon courts in reviewing the discretionary decisions of prosecutors regarding pretrial diversion.

I

The defendant, who is a pharmacist, and Carr Drugs, Inc., a Tennessee corporation, were indicted in May, 1990, on three counts for offenses which involved Medicaid payments and were alleged as follows:

---

1. Carr was indicted with his corporation, which is not a party to this appeal. For convenience, references to Carr, personally, will be as the defendant.

(1) First Count—Between October 21, 1987, and October 31, 1989, by means of a fraudulent scheme or device, the defendants unlawfully, feloniously, and willfully obtained or attempted to obtain medical assistance, other benefits, or payments to which they were not entitled in violation of T.C.A. § 71–5–118.

(2) Second Count—Between October 21, 1987, and October 31, 1989, by means of false statements or representations, the defendants unlawfully, feloniously and willfully obtained or attempted to obtain medical assistance, other benefits or payments to which they were not entitled in violation of T.C.A. § 71–5–118.

(3) Third Count—Between October 21, 1987, and October 31, 1989, the defendants, being vendors, unlawfully, feloniously and willfully falsified required reports or documents in violation of T.C.A. § 71–5–118.

These offenses are presently considered Class E felonies. T.C.A. §§ 40–35–119 (1990), 71–5–118(c) (Supp.1992).

As is normally the case in pretrial diversion cases, the record does not contain a detailed rendition of the events. It appears that the Tennessee Bureau of Investigation (TBI) was auditing the dispensing of certain drugs to Medicaid patients when it discovered certain fraudulent practices by the defendant and his corporation. The defendant admitted that, on occasion, he would file claims for payment on prescriptions that had not actually been prescribed. He explained that he had low-income customers who needed more monthly prescriptions filled than for which Medicaid regulations allowed payment. He viewed the regulations to be less than fair. He said that he suffered the financial loss when filling the prescriptions and that he, in effect, recouped the loss from the Medicaid system by filing the false claims.

## II

The defendant applied for pretrial diversion and a probation officer prepared a report for that purpose. The report included over twenty-five letters on the defendant's behalf and several petitions with several hundred signatures attesting to his good character and integrity. The letters were from ministers, business men, bankers, educators, attorneys, health care providers, city and county officials, as well as friends who had known him for years.

The defendant is fifty-three years old, married, and has three children and a stepchild who are adults. One brother is a minister and another is an insurance agent. Rising from modest beginnings, the defendant worked through high school, university and pharmacy college. He served in the Tennessee Army National Guard, receiving an honorable discharge.

The defendant served as a city councilman for approximately seventeen years. He helped raise funds and oversee the building of a new high school and had assisted the local library. The defendant served as president of the local pharmacists' association and the record reflects that he is respected by his fellow pharmacists, as well as by the medical profession. The defendant was very active in his church and involved himself in many local charities and community projects. Most of the letters indicated disbelief that the defendant was charged with a criminal offense. Succinctly put, the defendant has been a respected member of the community.

The defendant provided a statement which was included in the report. After stating what happened and the reasons therefor, the defendant said the following:

I realize now that my judgment was flawed, that I should have followed the letter of those rules and regulations and sought their change by [my] individual efforts and the efforts of organization[s] of pharmacists to which I belong.

I am extremely sorry for my actions and for the embarrassment I have caused for myself, my wife, my children, my parents and the citizens of my hometown where I serve on the board of aldermen.

The prosecutor denied the application, stating what he considered and explaining his reasons in a letter. (Appendix to this opinion). The essential reasons for the prosecutor's denial are as follows:

(1) The circumstances show "a systematic scheme to defraud ... not a crime of im-

pulse," involving considerable planning which would have continued absent discovery.

(2) The magnitude of the offense, noting the amount of money ($23,370.85) reflected by a partial audit covering August 1, 1988, through October 31, 1989.

(3) The number of individual claims and continuing nature of the offense.

(4) The particular need for deterrence because of the considerable opportunity for Medicaid fraud, which is serious and prevalent.

(5) The defendant's statements indicate little remorse and failure to accept responsibility.

Attached to the letter were audit documents showing the defendant's distribution of and Medicaid reimbursement for four drugs divided by strength of the dosage, such as, Tagamet 300, Tagamet 400, etc. The audit reflected the quantity of tablets for each drug distributed each month from August 1, 1988, through October 31, 1989. For that period, the audit showed overbilling and Medicaid overpayment for the listed drugs in the total amount of $23,370.85.

Also attached to the letter was a brochure distributed by the TBI entitled "Stopping Medicaid Provider Fraud." The brochure states that the Tennessee Medicaid Program is a billion dollar a year proposition which continues to grow and that, in recognition of the occurrence of fraud in the program, a Medicaid Fraud Control Unit was started by the TBI in 1984. It describes various types of provider fraud, noting that billing for services not performed is "[o]ne of the largest areas for fraud," and urges citizens to report provider fraud. The brochure contains a letter from a special agent in charge of the unit stating that provider fraud is a growing national problem and could cost Tennesseeans millions of dollars each year.

The trial court stated for the record what it considered in deciding to order pretrial diversion. It acknowledged that the defendant's conduct involved a planned scheme over an extended period of time. It noted that government programs are hard to regulate and that a great deal of fraud in the Medicaid area was occurring. It stated that the public depended upon providers like the defendant to be honest and trustworthy. It viewed the defendant's conduct as serious, stating:

> But make no mistake about this ... that Mr. Carr has committed a criminal offense, an act of dishonesty, one which cheats the taxpayers and everyone else, something surely that is entirely inconsistent with everything this man has been and done before and perhaps after in his lifetime. This is not a technical offense. I was a little bit concerned about the statement that he made, Mr. Carr made. While he openly admitted that he had done wrong, he made a comment to the effect that he should have followed the letter of the law, which could be taken that this is somewhat of a technical type of thing, a governmental red tape type thing. It's not. It's a very substantive offense that he's committed.

On the other hand, the trial court considered the defendant's background, social history, public service and past character as exemplary to the point of overwhelming. It determined that the defendant's background "bought" him a second chance, with little being accomplished by him having a criminal record. The trial court stated that "when you weigh all these things one against the other ... I think that diversion should be granted."

### III

The state complains that the trial court failed to conduct its review of the prosecutor's denial of pretrial diversion under the abuse of discretion standard. It contends that the trial court, essentially, conducted a *de novo* review of the factors relevant to diversion and conducted its own reweighing of those factors without giving proper deference to the prosecutor's determinations. In response, the defendant asserts that the trial court's review must necessarily include consideration of all of the relevant factors and that the prosecutor abused his discretion by failing to focus on the defendant's amenability to correction and the factors that relate thereto.

(A)

The legislature has vested the prosecutor with the power to evaluate applications for pretrial diversion and to decide which ones should be granted. T.C.A. § 40–15–105. The decision is to be made within the prosecutor's discretion, but a defendant may petition the trial court for a writ of certiorari and the trial court may overturn a denial upon a finding of abuse of discretion. T.C.A. § 40–15–105(b)(3). Thus, the discretion vested in the prosecutor is not unbridled and it must be exercised in the interests of justice. *State v. Hammersley*, 650 S.W.2d at 353.

Although the legislature failed to enact guidelines for entitlement, the courts have provided distinct limits to the prosecutor's discretion. For instance, a prosecutor may not adopt a policy of denial which defeats the purposes of pretrial diversion. *State v. Watkins*, 607 S.W.2d 486, 489 (Tenn. Crim.App.1980). Also, a prosecutor must consider all relevant factors in making a decision and he or she cannot ignore any relevant factors in the weighing process. *See State v. Herron*, 767 S.W.2d 151, 155 (Tenn.1989); *State v. Markham*, 755 S.W.2d 850, 853 (Tenn.Crim.App.1988).

In *Hammersley*, the Supreme Court indicated that the same factors relevant to the issue of probation should govern the prosecutor's discretion regarding pretrial diversion. It stated the following:

When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

650 S.W.2d at 355. The focus on amenability to correction is not an exclusive one, though. As *Hammersley* provides, deterrence of the defendant or of others is also to be considered by the prosecutor. *Id.* at 354. In fact, the circumstances of the crime and the need for deterrence may, in the appropriate case, outweigh the other relevant factors and justify a denial of pretrial diversion. *See, e.g., State v. Helms*, 720 S.W.2d 474 (Tenn.Crim. App.1986); *State v. Holland*, 661 S.W.2d 91 (Tenn.Crim.App.1983); *cf. State v. Markham*, 755 S.W.2d at 853.

Procedurally, to afford meaningful judicial review, it is incumbent upon the parties to memorialize the information or evidence and the reasons put forth to support their respective positions. In this regard, it is incumbent upon a prosecutor who is denying an application to articulate the factors and particularize the reasons upon which the denial is based. *State v. Herron*, 767 S.W.2d at 156.

(B)

Upon the defendant's petition for writ of certiorari being filed, the trial court must determine if the prosecutor's denial was an abuse of discretion, under a standard of review which has been defined by our Supreme Court. In his concurring opinion in *Pace v. State*, 566 S.W.2d 861 (Tenn.1978), the late Chief Justice Joe Henry stated that the decision "of the prosecutor is presumptively correct and should only be set aside on the basis of patent or gross abuse of prosecutorial discretion." *Id.* at 870. This statement was approved in *Hammersley* in which the Court also stated that "[t]he record must show an absence of any substantial evidence to support the refusal of the District Attorney General to enter into a memorandum of understanding before a reviewing court can find an abuse of discretion." 650 S.W.2d at 356.

This standard contemplates that the trial court will review the information and reasons provided in the record upon which the prosecutor's decision was based. It does not lend itself to a *de novo* hearing in which information or evidence which was not

submitted to the prosecutor is considered by the court. *See State v. Poplar*, 612 S.W.2d 498, 500 (Tenn.Crim.App.1980); *State v. Sutton*, 668 S.W.2d 678, 680 (Tenn.Crim.App. 1984).[2] Also, the abuse of discretion standard does not allow the trial court merely to substitute its judgment for that of the prosecutor. *See State v. Watkins*, 607 S.W.2d at 488. It is not the trial court's function to disapprove the denial whenever it disagrees with the prosecutor. It is obligated to defer to the prosecutor's discretion when the record contains any substantial evidence to support the decision. Thus, if the record would support either a grant or a denial of pretrial diversion, the trial court must defer to the prosecutor's discretionary decision. As our Supreme Court has previously stated regarding a discretionary decision in another context, if "the evidence would support either conclusion ... it cannot be an abuse of discretion to decide the case either way." *State v. Grear*, 568 S.W.2d 285, 286 (1978).

### (C)

As to appellate review of a trial court's action in a pretrial diversion case, there have been cases indicating that the trial court's finding is conclusive or presumed correct unless the evidence of record preponderates against it. *State v. Markham*, 755 S.W.2d at 853; *State v. Watkins*, 607 S.W.2d at 489. In *Markham*, the trial court received testimony from witnesses at the certiorari hearing, while in *Watkins*, this Court contemplated that testimonial evidence would be presented at such a hearing. As previously noted, the propriety of and the extent of this type of evidentiary hearing in a certiorari case may be open to question. In any event, the presumptive correctness relates to the trial court's factual findings.

■■■ However, if the evidence of record is undisputed and calls for no finding of fact to resolve the issue, a trial court's deter-

minations constitute conclusions of law to which an appellate court is not bound. *Execcutone of Memphis, Inc. v. Garner*, 650 S.W.2d 734 (Tenn.1983); *Continental Insurance Co. v. Cooper*, 58 Tenn.App. 316, 430 S.W.2d 661 (1968); *see State v. Helms*, 720 S.W.2d at 476. Thus, in such a case, the underlying issue for determination on appeal remains whether or not, as a matter of law, the prosecutor abused his or her discretion in denying pretrial diversion.

### IV

In this case, our review relates solely to whether or not there is any substantial evidence in the record to support the prosecutor's refusal to enter into a memorandum of understanding for pretrial diversion. Initially, we note that the information and evidence upon which the prosecutor's decision was based and which was submitted to the trial court for review was and is undisputed. The defendant has not contested the prosecutor's portrayal of the circumstances, extent, magnitude and continuing nature of the criminal conduct nor has he questioned the prosecutor's submission of information upon which the prosecutor determined that Medicaid provider fraud is a significant and prevalent problem. The defendant's complaints are that the prosecutor's determination that the defendant lacked remorse is not supported by the record and, more importantly, that the prosecutor failed to focus on the amenability to correction as required by *Hammersley*.

■■■ As to the prosecutor's position that the defendant had indicated little remorse and refused to accept responsibility, the record is not fully supportive of such determinations. Indeed, the defendant's statement specifically admits the wrongdoing and expresses regret. Although, as the trial court observed, the defendant's statement did reflect little appreciation of the serious-

---

2. In fact, if the writ of certiorari authorized by T.C.A. § 40–15–105(b)(3) is in the nature of common law certiorari, as it seems to be, then only questions of law may be reviewed by the court. *Hoover Motor Exp. Co. v. Railroad and Public Utilities Commission*, 195 Tenn. 593, 261 S.W.2d 233, 238 (1953). In such a case, the reviewing court determines if the agency acted within its authority and looks *only* to the evidence introduced before the agency exercising the discretion to determine whether or not there was any material evidence to support the discretionary decision, a review process dealing solely with questions of law. *Id.* 261 S.W.2d at 239; *see McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn.1990).

ness of his criminal conduct, the prosecutor's opinion of the defendant's attitude was unfounded. However, the fact that one of the reasons given for the denial was inappropriate does not foreclose a determination that substantial evidence still remains to support the prosecutor's decision. *See, e.g., State v. Helms, supra; State v. Holland, supra.*

■ As to the defendant's claim that the prosecutor did not focus on his amenability to correction and the factors relating thereto, we believe that the defendant misconstrues the prosecutor's position in this case. The record amply supports the conclusion that the prosecutor did not contest the defendant's amenability to correction. Indeed, it supports the proposition that the defendant is not presently in need of rehabilitation and represents no future risk for misconduct.

■ However, as his letter with attachments reflects, the prosecutor considered all relevant factors and concluded that the significance of the circumstances surrounding the defendant's criminal conduct and the deterrent effect on Medicaid providers outweighed the other factors. Reliance upon these two factors was authorized in *Hammersley* and they have justified the denial of pretrial diversion in previous cases. *See State v. Helms, supra; State v. Holland, supra.* In fact, the circumstances of the criminal conduct, alone, have justified denial. *See State v. Watkins, supra; State v. Sutton, supra.*

The defendant contends that the Supreme Court's comment in *Herron* regarding this Court's decision in *Markham* being the only case to "follow" *Hammersley* necessarily leaves little precedential value in other intermediate appellate decisions occurring between *Hammersley* and *Herron.* The defendant misreads the context of the Supreme Court's statement and what was actually at issue in *Markham.*

In *Markham* the defendants were charged in a two-count indictment with conspiring to defraud the state with regard to contracts for the construction of two bridges. The essence of the conspiracy was that state employees performed for a period of six months engineering services for the contractor on state time for which the defendant state employee was paid by the contractor. The proof indicated that the employee received $6,400.00 before the arrangement was discovered. The contracts of construction were completed by the contractor and the state recouped its loss by withholding funds for actual engineering services provided. The defendant's requests for pretrial diversion were denied by the prosecutor because the criminal activity "was extensive, was not impulsive and required considerable effort and planning by all parties" and for deterrence. The record reflects that the prosecutor's denial occurred before the pretrial investigation report, containing a detailed background investigation of the defendants, was prepared. After a full evidentiary hearing, the trial court ordered the defendants to be placed on pretrial diversion.

On appeal, the state contended that the prosecutor's denial can be justified on the circumstances of the crime and deterrence, citing, among others, *Sutton, Holland,* and *Watkins.* This Court acknowledged that the circumstances of the crime and the need for deterrence may be of such overwhelming significance that they outweigh all other factors.

> However, those cases do not hold that the district attorney general may disregard other relevant factors and consider only the circumstances of the crime and need for deterrence. An applicant may present and the district attorney general must consider evidence which tends to show that the applicant is amenable to correction and is not likely to commit further criminal acts.

> Since the district attorney general denied the application for diversion prior to completion of the pretrial investigation authorized by statute, his decision was made without the benefit of the report, which found Appellees to be good candidates for diversion. There is no evidence in the record which suggests that in this case deterrence is an overriding consideration. There is no showing that the facts of this case are particularly flagrant in comparison with other criminal conspiracies designed to defraud the State. Denial of diversion based only on the essential ele-

ments of a crime, without judicially weighing all relevant factors, effectively excludes persons charged with that crime from consideration for pretrial diversion. Only the legislature has that prerogative.

755 S.W.2d at 853. This Court noted and approved the trial court's determination that an abuse of discretion occurred because the prosecutor did not consider all of the relevant factors. The significant distinction in *Markham* was that the prosecutor completely failed to consider all factors relevant to the issue.

The circumstances in *Markham* do not exist in the case before us. The indictment alleges, the prosecutor contends, and the audit shows a continuing pattern of fraudulent conduct by the defendant over an extensive period of time reflecting a considered judgment by him to set upon a course of harming the public welfare to the substantial detriment of the Medicaid program. The defendant does not contest the extent of the criminal conduct claimed by the prosecutor to have occurred. Likewise, the prosecutor made a sufficient showing through the TBI pamphlet and the circumstances of this case that Medicaid provider fraud is a growing problem for which deterrence is a substantive factor. More importantly, contrary to *Markham*, the record in this case reflects good faith consideration by the prosecutor of all the factors and a *considered judgment* by him that the positive factors were outweighed by the significance of the criminal conduct and the particular need for deterrence.

As *Herron* points out, the reviewing court must look at all relevant factors existing in a given case in order to determine if the record reflects that the prosecutor duly considered them and, if the prosecutor did not, to determine if pretrial diversion is warranted. Obviously, a prosecutor must not deny pretrial diversion without considering all relevant factors and the failure of the record to show full consideration will afford the reviewing court the opportunity to hold that the prosecutor acted arbitrarily. However, *Herron* does not allow the trial court merely to substitute its own weighing process for that of the prosecutor when the record shows that the prosecutor did, in fact, consider all relevant factors. If it did, the abuse of discretion standard provided in *Hammersley* would be practically meaningless. The intent of the legislature was to give the prosecutor, not the court, the authority to decide which defendants should proceed to trial and which ones should be diverted before trial. Therefore, in close cases, the courts should defer to the prosecutor's decision.

■ We note that the primary concern of the trial court in this case was that a conviction on the defendant's record would be unwarranted, but such opinion by a court may not lead to an overturning of the prosecutor's denial as long as there is any substantial evidence in the record to support that denial. On the other hand, the legislature has empowered trial courts to grant judicial diversion under T.C.A. § 40-35-313. Under this statute, judicial diversion is similar to pretrial diversion except that the discretion rests with the trial court and it is effective only after the defendant is found guilty. Obviously, a finding of guilt may result from a guilty plea, a nolo contendere plea, a contested trial, or a trial upon stipulated proof. Judicial diversion, if successful, would result in a full dismissal of the charges in similar fashion to pretrial diversion.

It may seem to be a waste of judicial resources to say that a defendant is not entitled to pretrial diversion but is entitled to judicial diversion. Yet, it is a question of who has the authority or discretion to decide whether or not the case is going to result in a final resolution of the issue of guilt. Under judicial diversion, because the finding of guilt is already made, the state need not attempt to preserve evidence for future use, perhaps several years later, upon the contingency that the defendant is unsuccessful in the diversion program. Thus, if the prosecutor complies with all the requirements in considering pretrial diversion, we should be mindful that he or she is the person vested with the discretion to elect to proceed to a hearing to determine guilt. However, upon a determination of guilt, the trial court is vested with the discretion to elect to use judicial diversion in order that a defendant may not be branded with a judgment of conviction. This

avenue remains open to the trial court in this case.

There is no question in this case about the record amply supporting a grant of pretrial diversion if the prosecutor had so elected. However, the deference in this case is to the prosecutor's decision and not the trial court's.

In looking to factors relevant to the issue of probation, as *Hammersley* provides, we note that the 1989 Sentencing Act allows for some confinement even if there is a high potential for rehabilitation. *See* T.C.A. § 40-35-103(1)(B). Applying a similar standard, it is reasonable to conclude that a denial of pretrial diversion may reflect the appropriate seriousness of the defendant's criminal conduct and the particular need to deter others who are similarly situated and are tempted to violate the law to a similar extent. Health care providers are often respected members of the community for whom highly favorable pretrial investigative reports and background checks would normally be expected. It is difficult to quarrel with the thinking of the prosecutor, inherent in his denial, that to say such a person, including the defendant, will be entitled to pretrial diversion in a case of such extensive, planned criminal conduct occurring in a government program which has experienced increasing provider fraud is not the best message to send to other health care providers participating in the program. It is not our function to assign different weight to these factors as applied in this case to the decision regarding pretrial diversion.

We conclude, as a matter of law, that there is substantial evidence to support the prosecutor's denial of pretrial diversion given the circumstances of the criminal conduct and the particular need for deterrence as shown in the record. The judgment is reversed and the case is remanded to the trial court for further proceedings.

JONES and SUMMERS, JJ., concur.

## APPENDIX

Dear Mr. Gossum,

I have reviewed your application on behalf of Mr. Carr for pre-trial diversion under T.C.A. Section 40-15-101 et seq., and I have considered the pre-sentence report, the letters of support which you submitted, as well as the facts the State would expect to prove at trial. I believe that it would be inappropriate to place your client on pre-trial diversion, and I must therefore decline your application for the following reasons:

1. The circumstances of the case indicate that this was a systematic scheme to defraud the State, in violation of T.C.A. Section 71-5-118. This was obviously not a crime of impulse, but involved considerable planning; additionally, Mr. Carr had numerous opportunities to reflect on his conduct and alter his course of conduct but failed to do so. Had Mr. Carr's fraudulent billings not been discovered by the State, it is likely that his inflated reimbursement requests would be continuing still.

2. The magnitude of the offense weighs heavily against diversion. An audit by the Tennessee Bureau of Investigation confirms overpayment of $23,370.85 during the period of August 1, 1988 through October 31, 1989. It is to be noted that this audit was restricted to scrutiny of certain medications only and to a fairly short time period, from August 1, 1988 through October 31, 1989. (I am enclosing a copy of the results of the audit.)

3. Mr. Carr's statements indicate that he feels little remorse for what he has done and does not accept responsibility for his actions. In the pre-sentence report, Mr. Carr stated that "on occasion" he filed claims for medication not prescribed and that he felt "justified" in false claims because he was "merely recouping his losses" from Medicaid rules and regulations that he deemed unfair.

4. There is a particular need for deterrence as to fraud against the State, since there is obviously considerable opportunity to defraud. I am enclosing a copy of a pamphlet published by the State showing that Medicaid Provider Fraud is a significant problem in Tennessee and even nationally. In 1984, the State created a separate division of the Tennessee Bureau of Investigation specializing in investigations for Medicaid provider fraud, indicating the seriousness and prevalence of the problem.

5. The number of individual claims and the continuing nature of the offense weigh against pre-trial diversion.

I realize that the above considerations must be weighed against other factors in deciding eligibility for diversion. Mr. Carr's social history appears excellent, and he has obviously been a leader in the community. Many in the community obviously hold him in esteem and speak favorably in his behalf, as you have amply documented. Mr. Carr has no record of prior unlawful conduct. His physical and mental condition appear to be good at present. I note that Mr. Carr received an Honorable Discharge from military service, has a history of steady employment of over thirty-five years and is not experiencing financial difficulties.

As I have stated, I believe the considerations against diversion outweigh the favorable considerations, and that this application must therefore be denied.

Very truly yours,
PAUL F. GOODMAN
Attorney General Pro–Tem