IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2009 Session

## STATE OF TENNESSEE v. SUSAN GAIL STEPHENS

**Appeal from the Circuit Court for Coffee County**
**No. 35, 064F     L. Craig Johnson, Judge**

---

**No. M2008-00998-CCA-R9-CO - Filed June 23, 2009**

---

The Defendant, Susan Gail Stephens, was charged with two counts of statutory rape and two counts of contributing to the delinquency of a minor. The State denied her application for pretrial diversion, and she petitioned for a writ of certiorari to review the State's decision. The Circuit Court of Coffee County upheld the denial of pretrial diversion. The Defendant now appeals, arguing that the State, in its memorandum, considered irrelevant factors and failed to consider all relevant factors. After our review, we vacate the judgment of the trial court and direct that this case be remanded to the district attorney general for further consideration.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Vacated;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Jeffrey Rider, Tullahoma, Tennessee (at trial) and Russ Heldman, Franklin, Tennessee (on appeal), for the appellant, Susan Gail Stephens.

Robert E. Cooper, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Mickey Lanyne, District Attorney General; and Jason Ponder, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The record in this case contains two recitations of the facts. In her pretrial diversion application, the Defendant recounted the facts as follows:

On February 24, 2006, I was with [the victim] and other teenagers in my car in the Eaves' driveway and they had alcoholic beverages. They appeared to be intoxicated. The next night, Saturday, February 25, 2006, I was at the home of Chris and Kelly Eaves when the teenagers were again present and were drinking. I drank some beer and probably this is what caused me to lose my normal inhibitions and led to what happened later.

My memory of the exact events is hazy. However, I know that I became physically involved with [the victim] and we had intercourse. I am very sorry for what I did. This event has had a devastating effect on me and my family. I immediately went to seek treatment with a counselor. I did this even before I got a call from the investigator. The therapist is helping me understand why this happened and is helping me to prevent anything like this from happening in the future.

The State compiled a more detailed account of the relevant events in its memorandum denying pretrial diversion. According to the State, the circumstances of the offense are as follows:

Officers with the Tullahoma Police Department began receiving information and complaints about the Defendant and her friend (codefendant Kelley Renee Eaves) in late 2005 and early 2006. The complaints were in reference to the Defendant and Eaves hosting parties for high school students in the Eaves' home at 421 Albermarle Drive in Tullahoma. Several parents and students reported that defendants Eaves and Stephens allowed numerous boys into the home to consume alcohol and smoke cigarettes. Also, the defendants would consume alcohol, dance and act inappropriately with the boys. Complaints also came in that the women would drive around town in the Defendant's vehicle with their daughters and act inappropriately with the high school boys.

Upon investigation, Officer Joe Brown with the Tullahoma Police Department found that the defendants each had a 14 year-old daughter that was allowed to date a 17 year-old boy. Apparently the boys were then encouraged to come to the Eaves house and invite their friends to join the festivities. During these parties, the Defendant and Eaves would allow the high school boys to drink beer and smoke cigarettes. Although they deny giving beer to the boys, witnesses report that it was freely available and further, both defendants admit they knew the boys were drinking.

On or about February 18, 2006, during one of these "parties," the Defendant, Susan Stephens began her pursuit of the minor victim in this case . . . by kissing and fondling him. [The victim], a 17 year-old high school student would attend the parties and become intoxicated. He and the Defendant would speak on the phone, exchange text messages and see each other at the parties.

-2-

On February 24, 2006, the Defendant again met [the victim] at the Eaves home in Tullahoma. Again, [the victim] had been drinking and the Defendant made sexual advances toward him[.]

It should be pointed out that the [sic] both defendants' 14 year-old daughters were present during these parties with their respective 17 year-old boyfriends. Their boyfriends were also allowed to consume alcohol although both defendants deny their daughters consumed any themselves.

On February 25, 2006, the Defendant and Eaves hosted another "party." Witnesses report that [the victim] along with several other boys were intoxicated both inside and outside the residence. During this time, [the victim] and the other boys were yelling in the driveway and being loud. Sometime after this the Defendant and Eaves got into the Defendant's vehicle, which was parked in the driveway, along with [the victim] and another high school boy . . . . Defendant was talking to [the victim] because he was drunk and about to fight another boy. Reportedly, while this conversation was taking place, codefendant Eaves was engaged in kissing and petting with the minor . . . in the backseat. [The victim] then exited the vehicle followed by the Defendant. Later in the evening the victim . . . describes the following events:

> Everyone went inside. Me and [the Defendant] were in the garage. She was smoking a cigarette and I was drinking a beer. I turned on a Terry Clark song and we were dancing. [The Defendant] then pulled me over to the couch and said "come here." She was sitting on my lap. [The Defendant] then started kissing me and I kissed her back. She fell back on the couch and pulled me on top of her. I unbuttoned her pants, she unbuttoned my pants. She pulled down my pants to my knees and then she pulled her pants off. She said, "Do you really want to do this?" I said, "It's up to you." I said "Do I need to go get a condom?" She said "Yes." I ran out to my truck and got a condom. When I returned she jerked me back on the couch and asked "Do I need to put it on for you?" I said "No, I got it." Then we started making out and then I penetrated her.

The Defendant and the victim were then interrupted by the codefendant, Eaves, who laughed and went back into the house. As the evening went on, [the victim] was allowed to sleep in the Eaves' bonus room along with two other boys because they were still drunk. The Defendant chose to sleep in the bonus room with them. After she mistakenly believed everyone was asleep, the Defendant went to the recliner where [the victim] was sleeping, unbuttoned his pants, and had sex with him. Defendant's 14 year-old daughter was also in the house as well with her 17 year-old boyfriend.

The Defendant was charged with two counts of statutory rape under Tennessee Code Annotated section 39-13-506 and two counts of contributing to the delinquency of a minor under Tennessee Code Annotated section 37-1-156. Upon being denied pretrial diversion, she petitioned the Circuit Court of Coffee County for a writ of certiorari. In denying the Defendant's petition, that court found that the State "considered all relevant factors" and "reasonably weighed each factor." The court also found that there were "no material factual disputes raised by [the State] or the [D]efendant which would require an evidentiary hearing." The Defendant now appeals the trial court's denial of her petition.

**Analysis**

The pretrial diversion statute allows a district attorney general to suspend the prosecution of an eligible defendant for a period not to exceed two years. See Tenn. Code Ann. §40-15-105(a)(1)(A). In order to qualify for pretrial diversion, the defendant must not have previously been granted diversion; must not have a prior misdemeanor conviction for which a sentence of confinement was served or a prior felony conviction within a five-year period for such conviction; and must not be charged with a class A felony, a class B felony, certain class C felonies, certain sexual offenses not at issue in this case, driving under the influence, or vehicular assault. See id. § 40-15-105(a)(1)(B)(i)(a)-(c).

There is no presumption that a person eligible for pretrial diversion is entitled to diversion. See State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). The "defendant bears the burden of establishing that pretrial diversion is appropriate and in the interest of justice"; therefore, it is the responsibility of the defendant to provide "substantial favorable evidence for the district attorney general's consideration." State v. Bell, 69 S.W.3d 171, 179 (Tenn. 2002).

The decision to grant or deny an application for pretrial diversion rests within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105(b)(3). "When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered." State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983).

Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant. Id. If pretrial diversion is denied, the denial must be written, must list the evidence considered, discuss which factors were considered, and discuss the weight accorded to each factor. See State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997). "This requirement entails more than an abstract statement in the record that the district attorney general has considered these factors." Curry, 988 S.W.2d at 157 (citations omitted).

If the application for pretrial diversion is denied, the defendant may appeal to the trial court for a writ of certiorari. See Tenn. Code Ann. § 40-15-105(b)(3). On review, the trial court is

constrained to consider only the evidence considered by the district attorney general and must determine whether the district attorney general has abused his or her discretion. See Bell, 69 S.W. 3d at 177. An abuse of discretion may only be found where the prosecutor fails to consider all the relevant factors and their weight or reaches a decision not supported by substantial evidence. See id. On review, the decision made by the district attorney general is presumed correct. Curry, 988 S.W.2d at 158. Therefore, in a close case where the prosecutor could have legitimately granted or denied the application, the trial court must defer to the judgment of the prosecutor. See State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993). For purposes of our review, this Court is "bound by the factual findings made by the trial court unless the evidence preponderates against them." Bell, 69 S.W.3d at 177.

"However, if the evidence of record is undisputed and calls for no finding of fact to resolve the issue, a trial court's determinations constitute conclusions of law to which an appellate court is not bound." Carr, 861 S.W.2d at 856 (citations omitted). Therefore, when the facts are undisputed, the underlying issue that this Court must determine on appeal remains whether, as a matter of law, the district attorney general abused his or her discretion in denying pretrial diversion. Id.

### I. Reliance on Irrelevant Factors

The Defendant contends that the State relied on a number of irrelevant factors in denying pretrial diversion. First, she argues that the prosecutor considered his personal distaste for the television show Desperate Housewives in the following excerpt from his memorandum:

> One can barely turn on a television or radio without hearing of another example of middle-aged men and women taking advantage of high school and middle school students sexually. One particularly disturbing facet is the apparent distinction drawn in our society between male and female victims. Turn on an episode of Desperate Housewives and you will see the thirty-something housewife pining over the 17-year-old high school lawn boy, with whom she is having an affair. Numerous examples of these cases come to light, but somehow a distinction is drawn when the victim is male.

We disagree that such concerns are irrelevant. In this passage, the State did not merely express distaste for a particular television show, but rather used a television show as an example of why its denial of diversion was necessary to reinforce the seriousness of the Defendant's offense. This fits well within the State's duty to consider the ends of justice and the best interests of the public. See Hammersley, 650 S.W.2d at 355.

The Defendant also argues that the State inappropriately relied on certain "inflammatory societal issues" in denying her pretrial diversion, including concern about "sexually transmitted diseases, unplanned pregnancies, and the recent story out of Knoxville where the jealous husband shot and killed his wife's teenage paramour." The Defendant contends that the record does not demonstrate how the denial of pretrial diversion would serve to deter the conduct leading to any of these issues. The State cited those instances, however, in the context of its larger point that minors,

male or female, are deemed unable to "truly comprehend the gravity of these situations," and thus, gain some measure of protection from the deterrence value inherent in a denial of pretrial diversion. We conclude that this point was not irrelevant and that the State did not consider irrelevant factors. This issue is without merit.

### II. Failure to Consider All Relevant Factors

The Defendant next contends that the State abused its discretion by failing to consider all relevant factors, particularly her amenability to correction. As noted above, the State should "focus" on this factor in deciding whether or not to grant pretrial diversion. Hammersley, 650 S.W.2d at 355.

In its memorandum, the State noted that the Defendant has no prior criminal history. As to her social history, the State acknowledged the twenty reference letters accompanying her application for diversion, the first of which was a therapist's letter diagnosing the Defendant with depressive disorder. The remaining letters were uniformly supportive, although the State noted that letters from the Defendant's "friends and neighbors in her current community, members of her current church, or anyone from the Tullahoma City School system where she served as a substitute teacher" were "curiously sparse."

The State also considered the general and specific deterrence value of denying diversion to the Defendant, noting that an example should be made of "predators" like the Defendant, and also noting that while the Defendant's remorse was obvious, it was unclear "whether the Defendant [was] remorseful for her conduct, or remorseful for being caught." The State also explained its consideration of some other Hammersley factors, including the Defendant's mental and physical condition, her interests, the interests of the public, and the ends of justice.

The State apparently gave little consideration to the Defendant's amenability to correction, however. It did not devote a section of its memorandum to the issue and offered no information as to the weight that factor may have been given. The State did, in its conclusion, express concern with the "memory loss" inherent in the Defendant's version of the events as well as its belief that the Defendant had sought therapy only after learning of a police investigation of her actions. While these facts may tend to support a conclusion that the Defendant is not amenable to correction, the State did not offer any discussion directly on this issue and certainly did not "focus" on it as required by Hammersley.

## III. Remedy

Our supreme court has stated that "[i]f the trial court determines that the district attorney general has failed to consider and weigh all relevant factors, the trial court must reverse the district attorney general's decision and remand the matter for further consideration and weighing of all the factors relevant to the pretrial diversion determination." State v. McKim, 215 S.W.3d 781, 788 (Tenn. 2007). This procedure should also generally be followed in the event that a prosecutor relies upon irrelevant factors in denying pretrial diversion. See id. at 789.

The Defendant asks us to enter an order directing the trial court to grant her writ of certiorari and approve pretrial diversion, however. In so doing, she relies on State v. Russell L. Tipton, No. M2006-00260-CCA-R9-CO, 2007 WL 2295610 (Tenn. Crim. App., Nashville, Aug. 9, 2007). In Tipton, this Court ordered the trial court to grant pretrial diversion rather than remanding for further consideration. Id. at *7. We did so, however, because the State had already failed to properly exclude irrelevant factors on an earlier remand for further consideration. Id. There has been no previous remand in this case. Also, the prosecutor in Tipton refused to consider the Hammersley factors, instead categorically denying pretrial diversion to defendants charged with certain crimes he felt were particularly objectionable. Id. As such, he relied almost entirely on irrelevant factors. Id. We have explained above that the State erred in this case not by considering irrelevant factors but by failing to specifically address the Defendant's amenability to correction. As such, we conclude that a remand for further consideration is appropriate. See McKim, 215 S.W.3d at 788.

**Conclusion**

Based on the foregoing authorities and reasoning, we vacate the order of the trial court upholding the denial of pretrial diversion. We remand this case to the trial court and direct that the matter be remanded to the district attorney general for reconsideration of the pretrial diversion application consistent with this opinion.

_____
DAVID H. WELLES, JUDGE