# IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE

## AT JACKSON

### MARCH 1997 SESSION

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 02C01-9603-CR-00092 |
| | ) | |
| vs. | ) | Shelby County |
| | ) | |
| **GILBERTO R. CANTU,** | ) | Honorable W. Fred Axley, Judge |
| **and JOHN P. SCOTT,** | ) | |
| | ) | (Schedule IV) |
| Appellants, | ) | |
| | ) | |

FOR THE APPELLANTS:                    FOR THE APPELLEE:

MARVIN E. BALLIN                        JOHN KNOX WALKUP
Attorney At Law                        Attorney General & Reporter
200 Jefferson Avenue, Suite 1250
Memphis, TN  38103                     JANIS L. TURNER
                                       Counsel for the State
                                       Criminal Justice Division
                                       450 James Robertson Parkway
                                       Nashville, TN  37243-0493

                                       JOHN W. PIEROTTI
                                       District Attorney General

                                       ALANDA HORNE
                                       Assistant District Attorney General
                                       Shelby County District Attorney
                                          General's Office
                                       201 Poplar Avenue, Third Floor
                                       Memphis, TN  38103

OPINION FILED: _____

**AFFIRMED and REMANDED - JOHN P. SCOTT**
**AFFIRMED, AS MODIFIED and REMANDED - GILBERTO R. CANTU**

CURWOOD WITT, JUDGE

**OPINION**

The appellants, Gilberto R. Cantu and John P. Scott, appeal the Shelby County Criminal Court's denial of judicial diversion and imposition of a split, partially suspended sentence. The appellants both pleaded guilty to possession of a controlled substance[1] and requested judicial diversion, which was denied. The court below imposed identical sentences on the appellants of 14 months confinement, with all but 42 days suspended, and 2 years of probation and payment of fines. On review, we affirm both convictions, but we modify the sentence and the manner of service of the sentence of Gilberto R. Cantu, and we remand the case in order for the trial court to specify the conviction offenses with respect to each appellant.

On January 27, 1995, John P. Scott, a 23-year-old resident of San Antonio, Texas, and Gilberto R. Cantu, a 20-year-old resident of San Antonio, were stopped for traffic violations while traveling on I-240 in Memphis. The vehicle in which the appellants were traveling was driven by the appellant Scott, and the appellant Cantu was the sole passenger. The officer who made the stop apparently noticed a strong smell of marijuana coming from the vehicle and requested permission to search. Appellant Scott informed the officer he had marijuana in the car and consented to the search. While making the consensual search, the officer located four and one-half pounds of marijuana inside luggage in the trunk of the car and a small bag of marijuana under the passenger seat. Appellant Cantu told the officer he had been smoking marijuana and placed the small bag under the seat when he became nervous. Thereafter, the appellants were both indicted for possession of a controlled substance with intent to sell and possession of a

---

[1] As we discuss below, the record does not reflect whether the appellants pleaded guilty to possession of a controlled substance with intent to sell or possession of a controlled substance with intend to deliver. Both appellants were indicted on both charges.

2

controlled substance with intent to deliver, both in violation of Tennessee Code Annotated section 39-17-417, Class E felonies.

The appellants thereafter entered into an agreement with the District Attorney General whereby they would each plead guilty to one of the indicted offenses. Although the record is not entirely clear, it appears the agreement called for sentencing to be left to the discretion of the trial court, with the state recommending one year's probation and a fine.

At the sentencing hearing, the appellant Scott testified that when he was apprehended, he was transporting marijuana from Texas to Virginia. He testified on direct examination he met someone in San Antonio who "offered me an opportunity to make some money delivering the drugs involved." During cross examination, however, he said he knew the Virginia dealer from working with him at Sam's Club when he was living in Northern Virginia, and he essentially arranged the transaction based on his knowledge of the quantity needed by the Virginia dealer, which he purchased from a San Antonio dealer from whom he previously made small purchases for personal use. The money for the transactions was fronted by the Virginia dealer. Scott testified that he was not a drug dealer and had not engaged in any transactions other than purchases for personal use and this one large purchase for resale. He told the court he had entered into this particular deal because he needed money to pay bills and college expenses.

On cross-examination, Scott was unable to give the last name of the drug dealer in San Antonio from whom he purchased the marijuana. At this point, the court became very incensed and ordered a recess. Prior to taking the recess, the court made several statements, including, "I'm probably not going to give [diversion] to [Scott] anyway" and "I want to he[ar] it, or [diversion] ain't [sic] going

3

to happen." He also told counsel, "[Y]ou know where he's going, and he's going today." After the recess, Scott resumed his testimony and insisted he did not know the San Antonio dealer's last name, although he testified he took San Antonio narcotics officers to the dealer's apartment and workplace, provided them with information about the deal and gave them this dealer's telephone and beeper numbers. However, he testified, he declined a proposal that he participate in an undercover purchase of 50 pounds of marijuana from the dealer out of fear for his safety. Scott did not elaborate, and this court has no indication of the basis for this appellant's concern for his safety.

At the time of the offenses, Scott was employed, along with his co-appellant Cantu, at Sam's Club in San Antonio. Scott testified he was fired from Sam's Club as a result of the instant offenses. As a result of the offenses, he moved from San Antonio into his mother's home in Woodbridge, Virginia, where he enrolled at Northern Virginia Community College. He testified he had incurred financial losses as a result of his crime, and he and his family had been embarrassed by his actions. Moreover, he avowed that if the court gave him the chance he would not commit any crimes in the future.

Scott admitted a prior misdemeanor trespassing arrest in Virginia, and testified he had no other criminal record.[2] He admitted, however, to marijuana purchases and usage.

The appellant Cantu testified that he met his co-appellant on the job at Sam's Club. Cantu used marijuana with Scott prior to the offenses in question. Cantu recalled that the drug transaction had been discussed when Scott came to

---

[2] The record is devoid of any proof of a conviction, although Scott admitted committing the offense.

Cantu's apartment and told Cantu and his roommate about it. Cantu's roommate initially agreed to accompany Scott to deliver the marijuana to Virginia; however, the roommate changed his mind at the last minute and Cantu agreed to go on the delivery in his place. Cantu was to receive approximately $800 for his assistance in the delivery. Cantu testified he knew neither the Virginia dealer nor the San Antonio dealer.

Cantu testified that his goal was to become an electrical engineer. He was pursuing his education and continuing to work at Sam's Club at the time of the hearing. As part of the presentence report, letters discussing Cantu's good character and past accomplishments were submitted from former teachers, a priest and family friends.

Cantu testified that he and his family had been embarrassed by his actions. His parents, both of whom are teachers, had been ridiculed as a result of the offenses. He testified he knew what he had done was wrong and that he would not violate the law again.

The trial court accepted the guilty pleas of both appellants on one count of the indictment. The record does not specify whether the appellants pleaded and were adjudged guilty to possession of a controlled substance with intent to sell or possession of a controlled substance with intent to deliver, although both are Class E felonies. The court then denied judicial diversion to both Scott and Cantu based on "the enormity of the offense" and "the nature and circumstances of the offense in that they consorted with another or others to transport a large quantity to-wit 4.5 pounds of marijuana interstate." The court denied imposition of a Community Corrections sentence, stating simply, "It does not satisfy the Court's requirements." The court then imposed a sentence of 14 months, with all but 42

5

days suspended, two years of probation beginning upon the appellants' release from confinement, and fines. The sentence is identical in all respects as to both appellants.

# I

In their first issue, the appellants challenge the trial court's denial of judicial diversion. The Sentencing Reform Act of 1989 provides in pertinent part:

> If any person who has not previously been convicted of a felony or a Class A misdemeanor is found guilty or pleads guilty to a misdemeanor which is punishable by imprisonment or a Class C, D or E felony, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place the person on probation upon such reasonable conditions as it may require and for a period of time not less than the period of the maximum sentence for the misdemeanor with which he is charged, or not more than the period of the maximum sentence of the felony with which he is charged, on condition that the defendant pay, in addition to the payment of not less than ten dollars ($10.00) nor more than thirty-five dollars ($35.00) per month, as determined by the court [as part payment of the expenses of supervision of the defendant]. . . .

Tenn. Code Ann. § 40-35-313(a)(1) (Supp. 1996). The procedure under this provision is commonly referred to as judicial diversion. It is substantially similar to pretrial diversion; however, judicial diversion follows a guilty plea and the decision to grant diversion rests with the court, not the prosecutor. State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

The lower court's denial of judicial diversion is subject to appellate reversal only if that court abused its discretion. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983). When an appellant challenges the denial of judicial diversion, we are constrained not to revisit the issue if the record contains any substantial evidence supporting the trial court's decision. Hammersley, 650 S.W.2d at 356; accord, State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993) (where the evidence is capable of justifying differing results, this court allows the prosecutor his or her discretion on a decision of whether to allow pretrial diversion).

6

In determining whether to grant judicial diversion, the trial court must consider

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether diversion will serve the public's and the accused's interests in the ends of justice.

State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted). Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. Bonestel, 871 S.W.2d at 168 (citations omitted). The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. Bonestel, 871 S.W.2d at 168.

In the case sub judice, the trial court simply stated its reasons for denying judicial diversion. It articulated its reliance on "the enormity of the offense" and "the nature and circumstances of the offense." In other words, under the Bonestel analysis, the court based its determination on but one of the seven factors to be considered -- the circumstances of the offense. Moreover, the court did not explain whether it had considered any of the other factors, and if so, why they were not applicable. Under the dictate of Bonestel, the trial court's analysis does not adequately appear of record. The question remains, however, whether the trial court reached the correct result notwithstanding its failure to explain its analysis on the record. See State v. Talmadge G. Wilbanks, No. 02C01-9601-CR-00003 (Tenn. Crim. App., Jackson, Nov. 19, 1996) (trial court's denial of diversion affirmed despite court's failure to explain its considerations and analysis on the record).

With respect to the appellant Scott, we cannot conclude that the court

7

abused its discretion in denying judicial diversion. The record reflects Scott was untruthful, or at least lacked candor, with the trial court in that he gave conflicting accounts as to whether he was recruited by someone in Texas to transport drugs to Virginia or whether he arranged the transaction himself. We believe Scott's lack of candor with the trial court is illustrative of his amenability to correction. See State v. Paul Emile Oliver, No. 03C01-9510-CC-00322 (Tenn. Crim. App., Knoxville, July 15, 1996) (denial of pretrial diversion upheld based upon appellant's inconsistent statements to the trial court about his involvement in drug sales prior to apprehension); State v. Nease, 713 S.W.2d 90 (Tenn. Crim. App. 1986) (defendant who was untruthful with trial court appropriately denied diversion). Second, by all accounts, the circumstances of the offense are that Scott orchestrated the transportation of or at least agreed to transport a large quantity of marijuana across several states. The record strongly supports a conclusion that Scott planned this endeavor. As between himself and Cantu, Scott was clearly the more culpable offender. This "circumstances of the offense" factor was relied on by the trial court in its denial of judicial diversion. Third, Scott has a history of criminal activity -- trespassing and marijuana purchases and use. These factors all militate against judicial diversion.

Upon consideration of all of the facts and circumstances and with our narrow scope of review in mind, we conclude that the trial court did not abuse its discretion in denying judicial diversion to the appellant Scott. In our view, the negative factors that we have noted above outweigh this appellant's moderately positive social history, good health and the essentially neutral considerations of deterrence and the ends of justice. Accordingly, we find there is evidence of record to support the lower court's denial of judicial diversion to John P. Scott.

Next, with respect to the appellant Gilberto R. Cantu, the record

8

reflects he is a young man who appears to be amenable to correction. Several members of his community, including his priest and two former teachers, wrote to the court attesting to his good character and past peer leadership. He readily admitted his involvement and expressed his remorse at breaking the law and causing shame to his family. Unlike his co-appellant, there was no indication he was untruthful with the court about the nature and extent of his involvement in the conviction offense. He testified he is enrolled in college and has steady employment. Second, the circumstances of the offense were that the appellant became involved at the last minute when his roommate decided not to accompany Scott on the trip to Virginia. Contrary to the finding of the trial court that Cantu and Scott "consorted with another or others to transport a large quantity . . . of marijuana" to another state, there is no evidence of record that Cantu was involved in arranging the transaction or even knew the drug dealers between whom the marijuana was being transported. Next, we note that Cantu has no criminal record, although he admitted smoking marijuana. Moreover, the appellant Cantu's social history is extremely positive with the exception of his marijuana use. Both of his parents are teachers, and the appellant himself was a student leader in high school, serving as a member of the student council and as a drum major for the band. According to information in the presentence report, it appears Cantu moved into his parents' home following the offense. With respect to Cantu's physical and mental health, the presentence report reflects no concerns. Next, we see no evidence that this appellant would be any more deterred from future criminal conduct if judicial diversion is denied than if it was granted. Finally, the ends of justice ostensibly would be served by giving a second chance to this young man who made a mistake uncharacteristic of his past accomplishments, particularly given his comparatively less culpable role in this crime. In this vein, we believe Cantu has generally demonstrated the ability to meet the ordinary obligations of society as well as the ability and incentive to follow the law in the future. See Nease, 713 S.W.2d at 92.

9

This court has said that the presence of only one of the factors is sufficient to support a denial of judicial diversion. State v. Thomas Dailey, No. 02C01-CR-00008 (Tenn. Crim. App., Jackson, Aug. 21, 1991) (relying on State v. Baron, 659 S.W.2d 811 (Tenn. Crim. App. 1983) (applying this rule in the context of a denial of probation)). However, the supreme court has said that two of the factors, the circumstances of the case and deterrence, may not be given "controlling weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (pretrial diversion case) (emphasis in original) (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). The trial court made no finding on the record that the factor it relied on, the circumstances of the offense, was of overwhelming significance, but of course this finding is implicit in the court's decision.

Under Washington, appellant Cantu presents an "'especially compelling'" case for judicial diversion, Washington, 866 S.W.2d at 951; however, we notice that his role in the crime was not compelled by exigent circumstances and is not explained by impaired judgment. Moreover, he did not act inadvertently, nor even gratuitously. He was, by his own admission, motivated by lucre. He calculated to make a profit by illegally trafficking in a significant amount of drugs. Such a motive is inimical, we believe, to one's candidacy for judicial diversion because it entails a consideration of serving the public's interest in the ends of justice. See Washington, 866 S.W.2d at 951; Bonestel, 871 S.W.2d at 168. In this regard we find that, given the pecuniary nature of the enterprise, a mere reversal of economic fortune may not be an adequate penal response, or at least the trial judge could have reasonably found that this consideration sufficiently weighed against the factors favoring diversion. While we view it as a close case, we hold that the denial of judicial diversion for appellant Cantu is not an abuse of discretion.

10

**II**

The remaining issue challenges the propriety of the sentences imposed on the appellants.

In determining whether the trial court has properly sentenced an individual, this court engages in a <u>de novo</u> review of the record with a presumption the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our <u>de novo</u> review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (1990); <u>Ashby</u>, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1990); <u>Ashby</u>, 823 S.W.2d at 169.

The record in this case fails to demonstrate that the trial court gave appropriate consideration to the principles of sentencing as well as the relevant facts and circumstances. Although the trial judge relied on "the enormity of the offense" and the "nature and circumstances of the offense" in denying judicial diversion, there are no statements whatsoever which confirm that the trial judge considered any of the relevant factors in determining an appropriate sentence. Thus, we conduct our <u>de novo</u> review without the presumption that the trial court properly sentenced the appellant.

In this case, the appellants, as Class E felons, are presumed to be

11

favorable candidates for alternative sentencing under the 1989 Sentencing Act. See Tenn. Code Ann. § 40-35-102(6) (1990).

In conducting our de novo review, we have reviewed the enhancement and mitigating factors, neither of which were analyzed by the trial court. Likewise, neither party has argued for the application of these factors in their briefs. Looking first to the enhancement factors, we find that the appellant Scott was a leader in the commission of the offense and that he had a history of criminal convictions or criminal behavior.[3] See Tenn. Code Ann. § 40-35-114(1), (2) (Supp. 1996). The record reflects no enhancement factors relative to Cantu, except for the prior criminal behavior of using marijuana.

Considering next the mitigating factors, we find that Scott assisted the authorities in uncovering offenses committed by other persons, and he assisted the authorities in locating or recovering any person involved in the crime. See Tenn. Code Ann. § 40-35-113(1),(9),(10) (1990). We afford the latter two factors less weight because they are essentially duplicative of each other on the facts of this case. In the preceding section of this opinion we described the personal background of Cantu, and we consider the background factors of both appellants as mitigating circumstances. Tenn. Code Ann. § 40-35-113(13) (1990).

We point out that the presumptive sentence for a Class E felony is the minimum in the range, which in the case before us (Range I), is one year. Tenn. Code Ann. § 40-35-210(c) (Supp. 1996); Tenn. Code Ann. § 40-35-111(b)(5) (1990); Tenn. Code Ann. § 40-35-112(a)(5) (1990).

---

[3] This appellant admitted trespassing on a golf course in 1991 and purchasing and using marijuana on multiple occasions prior to his offense. While there was no evidence presented of prior convictions, the record shows a history of criminal behavior.

12

Upon consideration of these factors, as well as the presentence report, the arguments advanced by counsel, the testimony of the appellant and the nature and characteristics of this particular offense, we conclude that the length of the sentence imposed on Scott is justified and should not be disturbed. In the absence of enhancement factors that outweigh mitigating factors in Cantu's case, we modify his sentence of fourteen months and establish it at the minimum within the range, one year.

In suspending all but forty-two (42) days of the sentence that was imposed, the trial court has accorded alternative sentencing, in the form of split confinement, to the appellants. Of course, split confinement involves probation,[4] but our de novo review of the use of the ordered confinement entails our consideration of Tennessee Code Annotated section 40-35-103(1). This subsection lists grounds that may be used to support an order of confinement. None of the stated grounds applies in the case now before us except the ground set forth in the first clause of section 103(1)(B), that "confinement is necessary to avoid depreciating the seriousness of the offense[.]" Tenn. Code Ann. § 40-35-103(1)(B) (1990). The trial court essentially declared the need to avoid depreciating the seriousness of the offense when, with reference to the diversion request, he alluded to the "enormity of the offense" and the "nature and circumstances of the offense in that [the appellants] consorted with another or others to transport a large quantity to-wit 4.5 pounds of marijuana interstate." On review, we find that the ordering of some confinement is commensurate with the need to avoid depreciating the seriousness of this offense.

---

4

We note that the appellants are neither residents nor domiciliaries of Tennessee, and thus, we have not considered Community Corrections as a sentencing option.

It does not follow, however, in considering the record as a whole, that the periods of confinement should be identical for both appellants. As we have indicated in section I that deals with judicial diversion, supra, there is a discernible difference in the culpability of the two appellants. Appellant Cantu is less culpable for the reasons we have noted. While we have ruled that this difference does not compel us to find that the trial judge abused his discretion in denying diversion to Cantu, we do find that the distinction between these two offenders should be recognized in the provision for probation. Therefore, for these reasons and in the exercise of our responsibilities in reviewing this matter de novo, we hold that Cantu's sentence shall be suspended upon the service of twenty-one (21) days. With this modification and the modification of the length of Cantu's sentence, the sentences, manner of service, and fines of the appellants shall remain as they were established by the trial court.

### III

The final issue is one which this court has raised ex mero motu. Our review of the record reveals that nowhere therein is the precise convicting offense for either appellant conclusively established. The indictment charges both appellants with possession of a controlled substance with intent to sell and possession of a controlled substance with intent to deliver. It is beyond cavil that the two are separate offenses. See Tenn. Code Ann. § 39-17-417, Sentencing Comm'n Comments (Supp. 1996). The plea documents signed by both appellants are not illustrative. Appellant Scott's plea document shows simply "Charge(s) UPCS w/I marijuana" and Appellant Cantu's reads "Charges UPCS w/I S&D." The judgments are identical as to both appellants, reflecting that they were convicted of "unlawful poss. of a cont. subst. w/ intent." The transcript reflects that the trial judge accepted the guilty pleas of the appellants and found them guilty of "possession of a controlled substance with the intent to sell or deliver." (emphasis added) It is

14

apparent that the appellants pleaded guilty to only one of the two counts; however, the record does not reflect to which of the two counts the appellants entered their pleas. This information is essential, and this case is remanded for entry by the trial court. Tenn. R. Crim. P. 36.

In summary, the denial of judicial diversion in both cases is affirmed. With respect to Gilberto R. Cantu, we modify the trial court's sentence and establish the sentence at one year, to be suspended upon the service of twenty-one (21) days, together with the probationary period and fines as ordered by the trial court. With respect to John P. Scott, we affirm the sentence imposed below. Finally, we remand this case to the trial court for entry in the record of the convicting offenses as to both appellants and of the modification of appellant Cantu's sentence and manner of service of sentence.

_____
CURWOOD WITT, Judge

_____
JOSEPH B. JONES, Presiding Judge

_____
GARY R. WADE, Judge

15