IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2011

## STATE OF TENNESSEE v. CHARLOTTE McCARTER

**Extraordinary Appeal from the Circuit Court for Sevier County**
**No. 14694-II, 15281-II     Richard R. Vance, Judge**

---

**No. E2010-02127-CCA-R10-CD - Filed November 18, 2011**

---

In this extraordinary appeal, the Defendant-Appellant, Charlotte McCarter, appeals the Sevier County Circuit Court's order refusing to grant an interlocutory appeal regarding the denial of pretrial diversion. On appeal, McCarter argues that the prosecutor abused her discretion in denying her application for pretrial diversion by: (1) failing to properly consider her amenability to correction; (2) making "rote statements" that the evidence weighed in favor of denying pretrial diversion instead of properly weighing the relevant factors; (3) relying on the circumstances of the offense and the need for deterrence, where these factors were not of such "overwhelming significance" to justify the denial; and (4) failing to have "substantial evidence" to support her decision to deny pretrial diversion. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Bryan E. Delius and Bryce W. McKenzie, Sevierville, Tennessee, for the Defendant-Appellant, Charlotte McCarter.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James B. Dunn, District Attorney General, and Ashley D. Musselman, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Prosecutor's Denial of Pretrial Diversion.** McCarter was charged by presentment in case number 14694-II with the sale and delivery of a Schedule II controlled substance on March 3, 2009. She was also charged by presentment in case number 14695-II with the sale

and delivery of a Schedule III substance on March 6, 2009. McCarter filed an application for pretrial diversion for both of these case numbers on April 9, 2010, which was denied by the prosecutor. On May 17, 2010, the grand jury issued a superseding presentment in case number 15281-II, which charged McCarter with the sale and delivery of a Schedule II controlled substance on March 6, 2009.

On June 7, 2010, the trial court entered an order dismissing the indictments in case numbers 14694-II and 14695-II based on the superseding presentment in case number 15281-II. On June 22, 2010, McCarter then filed a separate application for pretrial diversion in case number 15281-II. On June 28, 2010, the trial court entered a corrected order showing that it was only dismissing case number 14695-II and that case number 14694-II was still pending.

On June 28, 2010, the assistant district attorney general denied McCarter's application in case number 15281-II. In her letter denying pretrial diversion, the prosecutor summarized the facts in case number 15281-II:

> On March 6, 2009, Detective Tommie Morlock and Detective Mark Turner . . . met with a Confidential Informant in Sevierville, Tennessee in reference to purchasing an amount of Schedule II Controlled Substance from [McCarter]. . . .
>
> The Confidential Informant . . . met with [McCarter] at her residence. The Confidential Informant gave [McCarter] $60.00 in confidential funds in exchange for four 15 mg Roxicet tablets. [McCarter] then gave the Confidential Informant the tablets.
>
> During this transaction [McCarter] also offered to sell the Confidential Informant some additional Hydrocodone tablets in the future. . . . Specifically, [McCarter] stated that her doctor ha[d] "upped her dosage." She explained that she [was] now prescribed 8 pills a day. She stated that she ha[d] 300 pills, which [was] "plenty." [McCarter] warn[ed], however, that if someone need[ed] the pills she [did] not want them to come "four or five times a day" because that would "be suspicious." . . .
>
> The 15 mg Roxicet tablets were also sent to the TBI Crime Lab for analysis, and were found to be Oxycodone, a Schedule II Controlled Substance. . . .

The prosecutor's denial letter also included a summary of the facts in case number 14694-II since those facts were "relevant due to the similar nature of the transaction, and because they show[ed] a continuing course of conduct." The assistant district attorney general summarized the facts in case number 14694-II:

> On March 3, 2009, Detective Tommie Morelock and Detective Mark Turner of the Sevier County Sheriff's Office Street Crimes Unit met with a Confidential Informant in Sevierville, Tennessee, in reference to purchasing an amount of Schedule II Controlled Substance from [McCarter]. . . .
>
> The Confidential Informant met with [McCarter] at her residence. The Confidential Informant gave [McCarter] $70.00 in exchange for four 15 mg Roxicet tablets. [McCarter] then gave the Confidential Informant the tablets, as well as $10.00 in change. . . .
>
> The 15 mg Roxicet tablets were sent to the TBI Crime Lab for analysis, and were found to be Oxycodone, a Schedule II Controlled Substance. . . .

The prosecutor noted that the facts provided in case number 14694-II were "identical" to those facts listed in McCarter's previous application for pretrial diversion.

The assistant district attorney general also provided information regarding McCarter's background, which included a discussion of her sixth-grade education, her family, and her work history, which showed that she had been employed from 1988 to 2002, when she became disabled. The prosecutor noted that McCarter suffered from "crippling arthritis, asthma, and [was] a breast cancer survivor" and acknowledged that McCarter had no prior criminal offenses. She also noted that McCarter had never been counseled for drug or alcohol abuse. The assistant district attorney general recited McCarter's version of the facts in this case and discussed the twenty-four letters of recommendation forwarded by McCarter's family and friends.

Regarding the circumstances of the offense, the prosecutor emphasized that McCarter sold Schedule II Roxicet tablets to the confidential informant on two separate dates and offered to sell the informant hydrocodone tablets in the future. Pursuant to an audio recording[1] of the drug transaction on March 6, 2009, McCarter told the confidential informant that her doctor had increased her dosage and that she now had 300 pills, which was "plenty." McCarter also told the informant that she did not want buyers of the pills to

---

[1]The audio recordings of McCarter's drug transactions on March 3, 2009, and March 6, 2009, were not included in the record on appeal.

approach her "four or five times a day" because that would "be suspicious." The assistant district attorney opined that McCarter's statements showed an intent to sell additional drugs in the future and to avoid arrest by police.

The prosecutor stated that the evidence from the audio recording of the drug transaction did not support McCarter's version of the facts of the offense, namely that she was supplementing the pain needs of the confidential informant's mother. The prosecutor gave weight to the fact that McCarter had participated in "at least two drug transactions" and gave "great weight" to McCarter's statements that she had "plenty" of pills and that she would sell drugs to other individuals in the future. The prosecutor found that the circumstances of the offense favored a denial of pretrial diversion.

The assistant district attorney general said that she gave "credit" to McCarter for her social history but did not find this factor to outweigh the other factors in this case. Specifically, the prosecutor noted that McCarter had lived in Sevier County her entire life, had attended school until the fifth grade, and after helping raise her family, had been gainfully employed until she became disabled. The prosecutor stated that she had reviewed the many letters of recommendation from friends and family who described McCarter as a "nice, hard-working, honest, and family-oriented" person who attended church and never got in trouble. She gave credit to McCarter for her good reputation in the community.

Regarding McCarter's physical or mental condition, the prosecutor said that McCarter's medical records confirmed that she suffered from arthritis and was a breast cancer survivor. Although the prosecutor gave McCarter "credit" for suffering from these health conditions and battling cancer, she found that these physical or mental conditions did not outweigh the other factors in this case. Moreover, the prosecutor noted that McCarter's health conditions made "it easier for [McCarter] to obtain prescription drugs, like the drugs she sold in these cases." The prosecutor said that McCarter's medical conditions allowed her access to the following drugs: Oxycodone, Tramadol, Furosemide, Megestrol, Clonazepam, Alprazolam, Advair, and Fentanyl.

Regarding her criminal history, the assistant district attorney general acknowledged that McCarter did not have a criminal history. However, she determined that this factor did not outweigh the other factors in this case.

The prosecutor found that McCarter was not amenable to correction given that she had sold drugs to the confidential informant on two different dates, had offered to sell the confidential informant hydrocodone tablets in the future, had stated that her doctor had "upped her dosage" to eight pills a day, and had said that she did not want people buying pills from her "four or five times a day" because that would "be suspicious." The assistant district

attorney general gave "great weight" to McCarter's statements that she had "plenty" of pills and that she was willing to sell pills in the future. Ultimately, she found that McCarter's actions and statements "reflect[ed] poorly on [her] amenability to correction."

Regarding the need for deterrence, the prosecutor again gave "great weight" to McCarter's statements that she had "plenty" of pills and that she was willing to sell pills to others in the future. She said that McCarter's statements "not only show[ed] that [she was] willing to participate in additional drug selling, but also indicate[d] that [she was] likely to continue defrauding her doctors in order to obtain pills to sell." She added, "Granting pretrial diversion to [McCarter] would depreciate the seriousness of the offense[s] and would depreciate the seriousness of the statements made by [her]." Moreover, the assistant district attorney general claimed that a grant of pretrial diversion "would suggest that [McCarter's] behavior is tolerable and [might] encourage [McCarter] or other similarly situated individuals to continue with similar illegal behavior."

The prosecutor found that granting pretrial diversion would not serve the ends of justice and would depreciate the seriousness of the offense. She maintained that encouraging or allowing criminal offenses like the ones in this case was "clearly not in the interest of the public or the Defendant" and concluded that "the public interest and the ends of justice in such a case strongly favor prosecution."

In conclusion, the assistant district attorney general gave "credit" to McCarter for her social history, lack of criminal history, and physical and mental condition but was "troubled by" the circumstances of the case. Specifically, she was "concerned that the Defendant [was] likely to continue defrauding her doctors in order to obtain pills to sell[] and [was] disturbed that she [was] using her physical conditions to obtain prescription[s] by fraud – another criminal offense." The prosecutor also was "alarmed by the Defendant's expressed willingness to illegally sell pills in the future." The prosecutor concluded that a denial of pretrial diversion was proper because "the circumstances of the offense, as well as the Defendant's amenability to correction, the deterrent effect on other criminal activity, and the ends of justice and interest of the public outweigh the factors in favor of suspending prosecution."

**Hearing on Petition for Writ of Certiorari.** On June 30, 2010, McCarter filed a petition for writ of certiorari in case numbers 14694-II and 15281-II, claiming that the prosecutor abused her discretion in denying her request for pretrial diversion. On August 3, 2010, the trial court conducted a hearing, wherein defense counsel reminded the court that McCarter was charged with selling a mere eight pills. Moreover, he asserted that the prosecutor "hinged [her] denial seemingly upon one statement that was made in this recorded transaction by [McCarter], that being that her doctor has elevated the prescription amount

that she is receiving and that she has the ability to sell more pills in the future." Defense counsel noted that the prosecutor's denial did not indicate that the prosecutor discussed the matter of McCarter's pretrial diversion with law enforcement. Specifically, he asserted that Tommie Morelock, the detective involved in this case, did "not oppose [pretrial] diversion in this matter for this lady considering all the circumstances that he now knows with regard to her health and her condition."[2] He stressed that McCarter had no criminal history, had devoted her life to caring for and supporting her family, was a lifelong resident of Sevier County, and had many health issues. He also argued that the prosecutor must consider all factors, including those that are favorable to the defendant. See State v. Bell, 69 S.W.3d 171, 178 (Tenn. 2002). Finally, defense counsel contended that the prosecutor failed to weigh each factor and only provided abstract statements that the unfavorable factors outweighed the favorable factors for the purposes of pretrial diversion. In response, the prosecutor asserted that she considered each request for pretrial diversion on a case-by-case basis. She added that she reviewed all of the records, letters of recommendation, and medical records that had been submitted for McCarter and considered all of the relevant factors before denying pretrial diversion in this case.

At the conclusion of the hearing, the trial court determined, after considering arguments of counsel and reviewing the record as a whole, that the prosecutor did not abuse her discretion in denying McCarter's application for pretrial diversion. Defense counsel then made an oral motion for permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, which the trial court denied. Then, on September 16, 2010, the trial court entered an order denying McCarter's petition for writ of certiorari in case numbers 14694-II and 15281-II. That same day, the trial court entered a separate order denying McCarter's request for permission to file an interlocutory appeal in both cases.

On October 13, 2010, McCarter filed an application for an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure in case number 15281-II, and the State responded to this application. On November 3, 2010, this court granted McCarter's request for an extraordinary appeal in case number 15281-II. On November 10, 2010, McCarter requested permission to amend her appeal to include case number 14694-II. On December 6, 2010, this court entered an order allowing McCarter's application for an extraordinary appeal to include case numbers 14694-II and 15281-II.

## ANALYSIS

---

[2]Detective Tommie Morelock did not testify at the August 3, 2010 hearing regarding the attitude of law enforcement, and there is no information in the record corroborating defense counsel's assertion that Detective Morelock supported the grant of pretrial diversion in McCarter's case.

Tennessee Code Annotated section 40-15-105(a)(1)(A) allows a district attorney general to suspend prosecution of an qualified defendant for a period of up to two years. A qualified defendant is one who has not been previously granted pretrial or judicial diversion, who has no prior misdemeanor conviction requiring the service of a sentence of confinement, and who has no prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction. T.C.A. § 40-15-105(a)(1)(B)(i)(a)-(b) (2006). In addition, the offense for which a defendant seeks pretrial diversion cannot be a Class A or Class B felony, certain Class C felonies, a sexual offense, driving under the influence, or vehicular assault. Id. § 40-15-105(a)(1)(B)(i)(c) (2006). In order to be granted diversion, a defendant must agree to complete certain conditions for the duration of the diversion period. Id. § 40-15-105(a)(2) (2006). Upon completion of pretrial diversion, the charges against the defendant shall be dismissed with prejudice. Id. § 40-15-105(e) (2006).

Although statutorily eligible, a qualified defendant is not presumed to be entitled to pretrial diversion. State v. Yancey, 69 S.W.3d 553, 557 (Tenn. 2002) (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999)). The decision to grant or deny pretrial diversion lies within the discretion of the district attorney general. T.C.A. § 40-15-105(b)(3); State v. Pinkham, 955 S.W.2d 956, 959 (Tenn. 1997). A defendant has the burden of establishing his or her suitability for pretrial diversion. Bell, 69 S .W.3d at 179.

The following relevant factors must be considered by the prosecutor when determining whether to grant or deny pretrial diversion: (1) the defendant's amenability to correction; (2) the defendant's propensity to re-offend; (3) the circumstances of the offense; (4) the defendant's criminal record; (5) the defendant's social history; (6) where appropriate, the defendant's physical and mental condition; and (7) whether pretrial diversion will serve the best interests of the public and the defendant. Pinkham, 955 S.W.2d at 959-60 (quoting State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983)). Additionally, the following factors and circumstances may also be considered to determine if pretrial diversion is warranted: the deterrent effect of punishment upon other criminal activity, the defendant's attitude and behavior since arrest, home environment, current drug use, emotional stability, employment history, general reputation, marital stability, and family responsibility as well as the attitude of law enforcement. State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (citations omitted).

The prosecutor "has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant." Bell, 69 S.W.3d at 178 (citing Pinkham, 955 S.W.2d at 959; Hammersley, 650 S.W.2d at 353). Moreover, a prosecutor should consider "[a]ny factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender[.]" Hammersley, 650 S.W.2d at 355. Factors related

to the need for deterrence and the circumstances of the offense "cannot be given <u>controlling</u> weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" Washington, 866 S.W.2d at 951 (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). "If the district attorney general denies pretrial diversion, that denial must be written and must include both an enumeration of the evidence that was considered and a discussion of the factors considered and weight accorded each." Pinkham, 955 S.W.2d at 960 (citing State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993)). The prosecutor must fully articulate his or her evaluation of each factor:

> If the application is denied, the factors upon which the denial is based must be clearly articulable and stated in the record in order that meaningful appellate review may be had. This requirement entails more than an abstract statement in the record that the district attorney general has considered these factors. He must articulate why he believes a defendant in a particular case does not meet the test.

State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989) (internal citation omitted), overruled in part on other grounds by Yancey, 69 S.W.3d at 559. Finally, the district attorney general must identify any disputed facts and must provide a reason for the denial of pretrial diversion. Winsett, 882 S.W.2d at 810.

If the application for pretrial diversion is denied, the defendant may seek a writ of certiorari in the trial court. T.C.A. § 40-15-105(b)(3). The prosecutor's decision to deny pretrial diversion is presumptively correct and is subject to review by a trial court for an abuse of discretion. Curry, 988 S.W.2d at 158. "[T]he trial court must only determine whether the district attorney general has abused his or her discretion by failing to consider and weigh all of the relevant factors or by reaching a decision that is not supported by substantial evidence." Bell, 69 S.W.3d at 179 (citing Curry, 988 S.W.2d at 158; Hammersley, 650 S.W.2d at 355).

The Tennessee Supreme Court has stated that "the district attorney general's failure to consider all of the relevant factors, including evidence favorable to the defendant, cannot be cured by the trial court's review." Id. "Because the trial court does not have appropriate findings made by the district attorney general upon which to review, allowing it to 'fill in the gaps' would extend de novo review over the district attorney general's decision and would allow the trial court to substitute its view over the pretrial diversion decision-making process." Id. Consequently, "[i]f the trial court determines that the district attorney general has failed to consider and weigh all relevant factors, the trial court must reverse the district attorney general's decision and remand the matter for further consideration and weighing of all of the factors relevant to the pretrial diversion determination." State v. McKim, 215

S.W.3d 781, 788 (Tenn. 2007) (citing <u>Bell</u>, 69 S.W.3d at 180). However, "[i]f the trial court determines that the district attorney general <u>has</u> considered all relevant factors, and no irrelevant ones, and has nonetheless committed an abuse of discretion in denying diversion, the trial court may order the prosecutor to place the defendant on pretrial diversion." <u>Id.</u> n.3 (citing T.C.A. § 40–15–105(b)(3) (Supp. 2004)).

Upon review of the writ of certiorari, the trial court must: (1) limit its consideration to the evidence which was before the prosecutor and the reasons given by the prosecutor in denying diversion; (2) conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant concerning the petition but not to hear additional evidence; (3) adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor; and (4) state its findings in writing. <u>State v. Oakes</u>, 269 S.W.3d 574, 578 (Tenn. Crim. App. 2006) (internal citations omitted).

In the event that the trial court refuses to grant the defendant's writ of certiorari, the defendant may seek interlocutory review in this court. <u>See</u> Tenn. R. App. P. 9, 10; Tenn. R. Crim. P. 38. On review, this court is "bound by the factual findings made by the trial court unless the evidence preponderates against them." <u>Bell</u>, 69 S.W.3d at 177. "However, if the evidence of record is undisputed and calls for no finding of fact to resolve the issue, a trial court's determinations constitute conclusions of law to which an appellate court is not bound." <u>State v. Carr</u>, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993) (citations omitted). Accordingly, in a case where the facts are undisputed, this court must determine whether the prosecutor abused his or her discretion in denying the defendant's application for pretrial diversion. <u>Id.</u>

**I. <u>Prosecutor's Failure to Focus on Amenability to Correction.</u>** McCarter argues that the prosecutor primarily focused on the circumstances of the offense in denying pretrial diversion and gave "only lip service to [her] amenability to correction." Specifically, she asserts that the prosecutor focused on her statements that she was "willing to sell more pills in the future" but argues that these statements were made by her during the offense and are not indicative of whether she would reoffend now that she has been arrested and criminally charged. In addition, she contends that the prosecutor failed to consider her "attitude, behavior since arrest, . . . home environment, current drug usage, current alcohol usage, emotional stability, past employment, general reputation, marital stability, family responsibility [or] attitude of law enforcement" in determining her amenability for correction. <u>See Markham</u>, 755 S.W.3d at 853. Moreover, she asserts that the amenability to correction section fails to mention any factors favoring her, including her admission that selling

prescription drugs "was a wrongful act that she will not repeat."[3]  The State does not specifically address any of these issues, except to argue generally that amenability to correction was one of the factors considered by the prosecutor.

Here, regarding the amenability to correction, the prosecutor noted that McCarter not only sold the drugs on the two dates in question but also offered to sell hydrocodone tablets in the future.  The assistant district attorney general said that McCarter made statements on the recording that her doctor had "upped her dosage," that she was now prescribed eight pills a day, that she currently had 300 pills, which she considered "plenty[,]" and that if a person needed the pills she did not want them coming to her "four or five times a day" because that would "be suspicious."  The prosecutor found that "the clear implication of these statements [was] that the Defendant [was] willing to sell more pills in the future, but [did] not want to do anything that would attract the attention of the police."  In conclusion, she gave "great weight" to McCarter's statements regarding the pills and her willingness to sell pills in the future and concluded that McCarter was not amenable to correction.

We conclude that the prosecutor fully considered McCarter's amenability to correction.  Although McCarter may disagree with the assistant district attorney general's finding that her statements indicated a willingness to commit similar drug offenses in the future, we conclude that the prosecutor did not abuse her discretion in finding that McCarter was likely to reoffend.  See Carr, 861 S.W.2d at 856.  A review of the denial letter shows that the assistant district attorney general did, in fact, consider factors relating to her home environment, past employment, and general reputation.  Moreover, recent Tennessee Supreme Court cases indicate that the prosecutor is under no obligation to consider all of the factors in Markham.  See McKim, 215 S.W.3d at 786-87; Bell, 69 S.W.3d at 176.  Finally, while the prosecutor does not mention any factors that favor McCarter in the amenability to correction section, she does mention several factors favorable to pretrial diversion in her denial letter, including McCarter's positive social history, lack of criminal history, and her physical and mental conditions.  Accordingly, we conclude that McCarter is not entitled to relief on these issues.

**II. Prosecutor's Abstract Statements.**  McCarter contends that the assistant district attorney general abused her discretion because her denial letter "is replete with 'rote statements'" that attempt to bypass actually weighing the relevant factors.  See State v. Holly A. Hatcher,  No. M2008-02042-CCA-R10-CO, 2010 WL 457491, at *6 (Tenn. Crim. App., at Nashville, Feb. 10, 2010) (holding that "more than a 'rote statement' that the negative factors outweigh the positive factors is required" and that the prosecutor "must assign a weight to each factor, both favorable and unfavorable, weigh the factors against each other,

---

[3]We do not see evidence of such an admission by McCarter in the record on review.

and reach a conclusion based on the relative weight of all factors"). In particular, she asserts that the following statements by the prosecutor "exemplify the use of rote notations in lieu of actual analysis" and "fail to show the true legal discernment required by our well-settled law regarding pretrial diversion":

(1)    "The State gives credit to the Defendant for [social] attributes, but does not find this factor to outweigh the other factors in this case."

(2)    "[T]he State does not find that [the Defendant's] physical or mental condition outweigh the other factors in this case."

(3)    "The State gives credit to the fact that the Defendant does not have a criminal history, but does not find this factor to outweigh the other factors in this case."

Once again, the State does not specifically address this issue in its brief. However, after reviewing the assistant district attorney general's denial letter, we conclude that the prosecutor did in fact "assign a weight to each factor, both favorable and unfavorable, weigh the factors against each other, and reach a conclusion based on the relative weight of all factors." Id. McCarter is not entitled to relief on this issue.

**III.   Circumstances of the Offense and the Need for General Deterrence.**
McCarter contends that the prosecutor abused her discretion by focusing on the circumstances of the offense and the need for deterrence to justify the denial of pretrial diversion where these factors did not possess such "overwhelming significance," especially given her positive social and criminal history. See McKim, 215 S.W.2d at 787. She also asserts that the prosecutor failed to produce any evidence showing a factual basis for the need for deterrence. See Pinkham, 955 S.W.2d at 960 (holding that a prosecutor is "required to identify the factual basis and rationale for the decision to deny pretrial diversion" (citing Winsett, 882 S.W.2d at 810; Hammersley, 650 S.W.2d at 355)). Finally, McCarter argues that the prosecutor's unsupported statement regarding the need for deterrence constitutes an abuse of discretion, given the type of offenses at issue on this case. See State v. Heather Richardson, No. M2010-01360-CCA-R3-CD, 2011 WL 303270, at *5-6 (Tenn. Crim. App., at Nashville, Jan. 25, 2011) (concluding that a single mother's conduct of selling drugs twice in a single day was not "so prolonged or egregious [as] to implicate the need for deterrence or necessity of protecting the public from her" given the strong factors favoring pretrial diversion), perm. to appeal granted (Tenn. Aug. 24, 2011).

Initially, we note that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been

considered as well." Curry, 988 S.W.2d at 158 (citing Washington, 866 S.W.2d at 951). Here, the prosecutor specifically determined that the circumstances of the offense, the need for deterrence, McCarter's poor amenability to correction, and the ends of justice and the interests of the public outweighed McCarter's positive social history, lack of criminal history, and her physical and mental conditions. Given that the prosecutor considered and weighed all relevant factors in this case, we conclude that the denial of pretrial diversion was proper.

McCarter also contends that the prosecutor failed to produce any evidence showing a factual basis for the need for deterrence. However, according to Pinkham, "the district attorney general is simply required to identify the factual basis and rationale for the decision to deny pretrial diversion." Pinkham, 955 S.W.2d 960 (citing Winsett, 882 S.W.2d at 810; Hammersley, 650 S.W.2d at 355). Accordingly, the prosecutor is under no obligation to identify the factual basis for the need for deterrence, and McCarter is not entitled to relief on this issue.

Finally, McCarter argues that the prosecutor abused her discretion in giving an unsupported statement regarding the need for deterrence, especially given the type and number of offenses at issue in this case. McCarter cites Heather Richardson, 2011 WL 303270, at *6, for the proposition that her conduct in this case was not so offensive that it triggered the need for deterrence or the need to protect society from her. However, in Heather Richardson, the prosecutor, under the mistaken belief that the defendant engaged in multiple drug transactions over a period of two months, relied on the need for deterrence and the interests of society in justifying the denial of pretrial diversion. Id. at *5. Upon interlocutory review, this court concluded that the prosecutor failed to make findings on most of the factors, failed to weigh the factors, and failed to state why the unfavorable factors outweighed the favorable factors. Id. Moreover, the court recognized that although the prosecutor acknowledged that the defendant had no criminal record and might be amenable to correction, he neither discussed the weight given to this factor nor explained how this factor was outweighed by the negative factors. Id. Ultimately, the court reversed the order affirming the prosecutor's denial and remanded the case to the trial court with instructions to order the prosecutor to approve the defendant's application for pretrial diversion. Id. at *6. It is evident that the prosecutor's problematic findings in Heather Richardson vary dramatically from the prosecutor's findings in the instant case. Because the prosecutor considered and weighed all relevant factors in McCarter's case, we conclude that the denial of pretrial diversion was proper.

**IV. Absence of "Substantial Evidence" to Support Denial.** McCarter argues that the prosecutor based her denial on facts not "supported by substantial evidence." See McKim, 215 S.W.3d at 788 ("'[T]he trial court should examine each relevant factor in the pretrial diversion process to determine whether the district attorney general has considered

that factor and whether the district attorney general's finding with respect to that factor is supported by substantial evidence.'" (quoting Yancey, 69 S.W.3d at 559)). Specifically, McCarter takes issue with the prosecutor's finding that she would continue to defraud her physicians in order to illegally sell these drugs. She asserts that there was no "substantial evidence" showing that she was defrauding her doctors and that her medical records show "the legitimacy of [her] pain medication." She also takes issue with the prosecutor's finding that she was not amenable to correction because of her statement that she had "plenty" of pills since there was no other evidence that she was likely to reoffend. The State again does not address these issues on appeal.

McCarter argues that there was no "substantial evidence" that she was defrauding her doctors. She also contends that her prescriptions were legitimate. After reviewing the record, we conclude that it is unlikely that McCarter was completely honest with her prescribing physicians. If she had been, she would have needed all of the medication to alleviate her own pain and would not have possessed a large reserve of pain medication that she was willing to sell to others. Upon review, we conclude that the prosecutor's evaluation of McCarter's conduct regarding the sale of drugs prescribed to her was supported by substantial evidence.

Other than the prosecutor's finding that she was not amenable to correction because she had "plenty" of pills, McCarter contends that there was no other evidence that she was likely to reoffend. The prosecutor's denial shows that McCarter was not amenable to correction because she sold drugs to the confidential informant on two different dates, offered to sell the confidential informant hydrocodone tablets in the future, stated that her doctor had "upped her dosage" to eight pills a day, and said that she did not want people buying pills from her "four or five times a day" because that would "be suspicious." The prosecutor concluded that McCarter's statements at the time of the offenses indicated that she would reoffend. Although McCarter may not agree with the prosecutor's finding, we cannot conclude that the prosecutor's finding is not supported by substantial evidence. Accordingly, McCarter is not entitled to relief on this issue.

**CONCLUSION**

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE

-13-